[No. 9,478.  In Bank. — July 29, 1884.]

## THE COUNTY OF LOS ANGELES, APPELLANT, *v.* THE CITY OF LOS ANGELES, RESPONDENT.

FINES AND FORFEITURES—JUSTICES OF THE PEACE OF THE CITY OF LOS ANGELES. — Fines and forfeitures imposed and collected by the justices of the peace of the city of Los Angeles, whether imposed for a violation of the laws of the State, or of the ordinances of the city, should, after deducting the costs and fees of the officers, be paid into the county treasury.

ID. — ACTION BY COUNTY. — The county of Los Angeles may maintain an action against the city of Los Angeles, to recover the amount of any such fines and forfeitures paid into the city treasury.

Id. — Los Angeles City Court — Deputation by Mayor. — The mayor of the city of Los Angeles cannot, by a general deputation, substitute a justice of the peace to act in his place as judge of the city court. He can depute a justice of the peace for that purpose only in case of his absence from the city, or inability to act.

Appeal from a judgment of the Superior Court of Los Angeles County.

The facts are stated in the opinion of tne court.

*Stephen M. White,* for Appellant.

*John F. Godfrey,* and *W. D. Stephenson,* for Respondent.'

McKee, J. — By a statute passed April 1, 1880, relative to the courts of justice of the State and the various officers connected therewith, it was provided that in every city in the State having ten thousand and not more than twenty thousand inhabitants, there shall be elected one justice of the peace, to whom shall be paid a salary of two thousand dollars per annum, payable out of the general fund in the city treasury. It was also provided that the justices should collect all the fees, chargeable by law, for services rendered by them, and report under oath, on the first Monday in every month, the amount of said fees, to the treasurer of the city, and pay the same into the treasury of the city to the credit of its general fund. (§ 103, Stats. 1880, p. 77; *Coggins v. Sacramento,* 59 Cal. 599.)

Under that statute, a justice of the peace who had been elected in and for the city of Los Angeles, between January, 1880, and January, 1883, and his successor in office since January, 1883, collected fines imposed and forfeitures incurred in cases tried and determined by them respectively, for violations of the laws of the State and of the city, and each reported to the treasurer, under ordinances of the city, the amount he had received, and paid the same into the city treasury.

The fines and forfeitures thus collected and paid over to the city treasury aggregated the sum of eleven thousand six hundred and five dollars, about one half of which, it is stipulated, were imposed or incurred for violations of State laws, and the other half were imposed as fines for violating city ordinances.

.The county of Los Angeles claims to be entitled to this money. Her contention is that the justices of the peace were

required by law to pay all fines and forfeitures collected by them into the county treasury. The contention seems to be well founded. Section 1570 of the Penal Code provides: "All fines and forfeitures collected in any court, except Police Courts, must be applied to the payment of the costs of the case in which the fine is imposed or the forfeiture incurred, and after such costs are paid, the residue must be paid to the county treasurer of the county in which the court is held." Section 1457 also provides: "Upon payment of a fine before or after commitment, . . . . the money must be applied to the payment of the expenses of the prosecution, and the residue must be paid over within ten days to the county or city treasurer, according as the offense is prosecuted in a Justice's or Police Court." These sections of the Code were not expressly repealed by the statute of 1880, nor were they repealed by implication, for between their provisions and those of the statute there is no inconsistency. The sections were therefore in force at the time of the collection of the fines and forfeitures in controversy, and they constituted the law regulating their disposition. Under that law, the duty was imposed upon officers collecting fines and forfeitures to pay them, in the manner prescribed by law, into the county treasury; and the penal law enforced that duty by declaring that the officer who refused or neglected, for thirty days after collecting such fines or forfeitures, to pay over the same according to law, was guilty of a misdemeanor. (§ 427, Pen. Code.)

The statute of 1880 and sections 1457 and 1570 must, however, be read together, because they not only regulate the duty of justices of the peace as to the disposition of the fines and forfeitures collected by them, but also as to the disposal of the fees of the justices, in cases in which the fines were imposed or the forfeitures incurred. If the one was imposed or incurred, without costs, or with costs which were not collected, it is made the duty of the officer to collect the costs out of the fines or forfeitures paid to him, and to report the amount of his fees to the city treasurer and pay it into the city treasury, as required by the statute of 1880, and pay over the residue into the county treasury as required by sections 1457 and 1570, *supra.* But if the fine was imposed or the forfeiture incurred with costs, and the fine or forfeiture with costs were paid, then the entire fine or

forfeiture is to be paid into the county treasury, and the fees of the justice are to be paid into the city treasury.

The moneys in controversy seem to have been received in the latter class of cases, for the fact is admitted that they were received by the officers "in addition to the sums properly applicable to the payment of the costs of the cases in which such fines were imposed or such forfeitures incurred, and in addition to all fees which are by law chargeable for services rendered by the parties."

But it is insisted that one half of these moneys were collected in cases prosecuted in the Police Court of the city for violating the ordinances of the city, and that these were legally paid into the city treasury. This contention is founded upon the provisions of the city charter, which constitutes the mayor of the city *ex-officio* judge of the city court, with the criminal jurisdiction of a justice of the peace, within the city limits; and authorized him in case of absence from the city or inability to act as city judge, to deputize any justice of the peace in the city to act for him in his place, as judge of said court, and to exercise his powers and perform his duty; and one of those duties was to pay all fines collected by him as city judge into the treasury of the city, to the credit of the salary fund thereof. (§§ 10, 11, 12, 13, 15, art. v. Charter 1878.)

Assuming to act under these provisions, the mayor of the city did, by a general deputation, substitute each of said justices to act for him "in his place and stead, as the judge of the city court." And "whenever proceedings were had before either of said justices for violating the ordinances of the city, each styled himself and claimed to act as 'justice of the peace of Los Angeles City, and *ex-officio* judge of the city court thereof,' and were so designated in all processes issued in said cases." As, however, the deputation was not made for any temporary cause, nor inability to act, but was made generally and upon the only ground "that the mayor could not perform the judicial functions of the office without neglecting some other duties pertaining to the office," it carried with it no authority to act. The mayor could not by a general deputation delegate to others judicial powers devolved upon him by the charter. Besides, the justices did not, so far as appears by the record, attempt to act under

the deputation; for, although each styled himself a "justice of the peace of Los Angeles City, and *ex-officio* judge of the city court thereof," there was no such judicial officer known to the law.

Moreover, neither presided in the trial of the cases in which the fines were imposed in the capacity of a police judge. Each held a Justice's Court in which, as justice of the peace, he exercised the criminal jurisdiction appertaining to his court, and imposed the fines for offenses prosecuted therein; and when these fines were paid to him he received them, not as a police judge, but as a justice of the peace; and in that capacity, he was bound to make such disposition of them as was authorized by the law under which they were imposed and collected.

They were not so disposed of. Under a mistaken belief that they were legally liable to pay over these fines into the city treasury, the officers reported and paid them to the city, and the city treasurer doubtless received them under the same mistake. But this disposition of them was not authorized by law; and as the city, by the mistake of its officers in the performance of their duty, has obtained money which under the law ought to have been paid into the county treasury, it ought not in justice to be kept; it is the duty of the city to refund it. "If," says Mr. Justice Field in *Argenti* v. *San Francisco*, 16 Cal. 255, "the city obtain money of another by mistake or without authority of law, it is her duty to refund it—not from any contract entered into by her on the subject, but from the general obligation to do justice which binds all persons, whether natural or artificial."

It follows that the action in hand is maintainable by the county; and that upon the facts of the case, as averred and stipulated, the court below erred in sustaining the demurrer.

Judgment reversed and cause remanded, with direction to the court below to overrule the demurrer.

MYRICK, J., SHARPSTEIN, J., ROSS, J., and McKINSTRY, J., concurred.