[L.A. No. 31084. June 5, 1980.]

COUNTY OF LOS ANGELES, Plaintiff and Respondent, v.
CITY OF ALHAMBRA, Defendant and Appellant.

186

Counsel

Leland C. Dolley, City Attorney, Burke, Williams & Sorensen, Mark C. Allen, Jr., and Talmage V. Burke for Defendant and Appellant.

James B. Lindholm, Jr., County Counsel (San Luis Obispo), David K. Hughes, Deputy County Counsel, Donald L. Clark, County Counsel (San Diego), Lloyd M. Harmon, Jr., Chief Deputy County Counsel, and C. Larry Davis, Deputy County Counsel, as Amici Curiae on behalf of Defendant and Appellant.

John H. Larson, County Counsel, and John P. Farrell, Deputy County Counsel, for Plaintiff and Respondent.

John W. Witt, City Attorney (San Diego), and Janis Sammartino Gardner, Deputy City Attorney, as Amici Curiae on behalf of Plaintiff and Respondent.

Opinion

NEWMAN, J.—In this case we consider the validity of § 12.08.010 of the Alhambra Municipal Code (the ordinance), which provides for the

city's collection of parking-violation fees and for prosecution under the state Vehicle Code of only those violations as to which the city fee remains unpaid.[1]

Penal Code section 1463 provides for distribution to the County of Los Angeles of 13 percent of Vehicle Code fines and forfeitures collected following arrests by Alhambra employees.[2] On August 13, 1974, the

---

[1]The ordinance reads: "12.08.010 Enforcement procedure. (a) Procedure for Payment of Penalty. For the purpose of regulating the use of lots, streets and traffic thereon and as a deterrent to the abuse of parking privileges provided in this code, a fee shall be charged for overtime or illegal parking in any parking lot or in any space adjacent to any parking meter, which fee shall be in the amount of fifty cents for each hour or portion thereof during which the violation continues, provided the same is paid in the manner provided in this subparagraph. Any overtime parking violation on any municipal parking lot or parking meter zone which continues for a longer period of time than one hour shall be deemed to be a continuing violation and each complete one hour period plus any remaining fraction of an hour shall be deemed to be a separate violation. Such fee shall be placed in the envelope furnished with such notice and the envelope and fee shall be deposited at or before nine a.m., of the day following that on which the parking violation occurs and shall be deposited in any courtesy box furnished by the city for that purpose, or the same may be paid by personal delivery to the office of the city treasurer at or before said time. In the event that the day following such violation falls upon a Sunday or legal holiday then the time within which such payment is required to be made is extended to nine a.m., of the next business day immediately following such Sunday or holiday. If such penalty is paid after nine a.m. of the day following that on which the parking violation occurred or after nine a.m. of the next business day immediately following a Sunday or holiday if the day following the date of such violation falls on a Sunday or holiday, the penalty shall be two dollars instead of the fifty cents penalty specified hereinabove; provided the two dollar penalty is paid prior to the date specified for the court appearance of the violator.

"(b) Notice of Violation. City employees charged with the duty of enforcement of the provisions of this code relating to time limitations in parking lots and parking meter zones shall, when any vehicle is unlawfully parked overtime, as prohibited in this code, issue a written notice thereof stating the meter number, the state vehicle license number, the make of such vehicle, the time and date of such vehicle parking, a reference to the sections of this code so violated, and a time and place for appearance by the person committing such violation to answer such notice. Such notice shall be attached to the vehicle, either on the steering post or front door handle thereof, or in such other conspicuous place on the vehicle as can be easily observed by the person in charge of such vehicle upon his return thereto. Such notice shall be in the form prescribed by the city treasurer.

"(c) Failure to Pay. Should any such fee not be paid and deposited as provided herein, then the person committing such violation shall be subject to the penalties provided in this code and in the vehicle code and other laws of the state of California applicable to traffic violations within the city, and necessary proceedings shall be instituted in the municipal court of the Alhambra judicial district by the city employee charged with the enforcement of parking meter regulations, as provided in Section 41102 and 41103 of the vehicle code of the state of California."

[2]Penal Code section 1463 states: "Except as otherwise specifically provided by law:

"(1) All fines and forfeitures including Vehicle Code fines and forfeitures collected upon conviction or upon the forfeiture of bail, together with moneys deposited as bail, in any municipal court or justice court, shall, as soon as practicable after the receipt

county sued Alhambra to enjoin enforcement of the ordinance and for a share of the fees collected under it. After trial on stipulated facts the trial court awarded judgment (1) for 13 percent of fees collected since August 13, 1971, with interest, (2) declaring that the ordinance was preempted by the Vehicle Code, and (3) permanently enjoining its enforcement. Alhambra appeals.

thereof, be deposited with the county treasurer of the county in which such court is situated. The moneys so deposited shall be distributed as follows:

"(a) Once a month there shall be transferred into the proper funds of the county an amount equal to the fines and forfeitures collected during the preceding month upon the conviction or upon the forfeiture of bail following arrests made by officers or other persons employed by the state or by the county in which such court is situated, exclusive of fines or forfeitures or forfeitures of bail collected from any person arrested by a state officer and charged with the commission of a misdemeanor under the Vehicle Code within the limits of a city within the county.

"(b) Except as otherwise provided in this subdivision, once a month there shall be transferred into the traffic safety fund of each city in the county an amount equal to 50 percent of all fines and forfeitures collected during the preceding month upon the conviction or upon the forfeiture of bail from any person arrested by a state officer and charged with the commission of a misdemeanor under the Vehicle Code within that city, and an amount equal to the remaining 50 percent shall be transferred to the special road fund of the county; provided, however, that the board of supervisors of the county may, by resolution, provide that not more than 50 percent of the amount to be transferred to the special road fund of the county, be transferred into the general fund of the county.

"Once a month there shall be transferred into the general fund of the county an amount equal to that percentage of the fines and forfeitures collected during the preceding month upon the conviction or upon the forfeiture of bail from any person arrested by a state officer and charged with the commission of a misdemeanor under the Vehicle Code on state highways constructed as freeways whereon city police officers enforced the provisions of the Vehicle Code on April 1, 1965, within the limits of a city within the county which is set forth in the schedule appearing in subparagraph (c) of this paragraph (1). If this paragraph is applicable within a city, it shall apply uniformly throughout the city to all freeways regardless of the date of freeway construction or completion.

"(c) Once a month there shall be transferred into the general fund of the county an amount equal to that percentage of the fines and forfeitures collected during the preceding month upon conviction or upon the forfeiture of bail following arrests made by officers or other persons employed by each city in the county which is set forth in the following schedule:

| County and city | Percentage |
| --- | --- |
| " . . . . . . . . . . . . . | |
| Los Angeles | |
| Alhambra | 13 |
| " . . . . . . . . . . . . | |

"In any county for which a county percentage is set forth in the above schedule and which contains a city which is not listed or which is hereafter created, there shall be transferred to the county general fund the county percentage. In any county for which no county percentage is set forth, and in which a city is hereafter created, there shall be transferred to the county general fund 15 percent.

"A county and a city therein may, by mutual agreement, adjust the percentages herein.

## Preemption

■ The Vehicle Code contains its own preemption rule. Section 21 declares that "no local authority shall enact or enforce any ordinance on the matters covered by this code unless expressly authorized herein."[3] Is the ordinance here consistent with that provision?

Code sections delegate to cities authority to regulate parking on streets (§ 22507) and in municipal parking lots (§ 22519), and to fix fees for parking-meter zones (§ 22508) and offstreet parking (Gov. Code, § 54037).[4] There appears, however, to be no statute that authorizes cities to set penalties for violation of their parking regulations.

The Vehicle Code, by way of contrast, provides comprehensively for such penalties. Violation of a parking ordinance is an infraction presumed to have been committed by the vehicle's registered owner if notice requirements are met.[5] The notice must be attached conspicuous-

---

"(d) Once a month there shall be transferred to each city in the county an amount equal to the total sum remaining after the transfers provided for in subparagraphs (b) and (c) above have been made of the fines and forfeitures collected during the preceding month upon conviction or upon the forfeiture of bail following arrests made by officers or other persons employed by such city or arrests made by state officers for misdemeanor violations of the Vehicle Code."

[3] All references are to the Vehicle Code unless otherwise indicated. Section 21 states in full: "Except as otherwise expressly provided, the provisions of this code are applicable and uniform throughout the State and in all counties and municipalities therein, and no local authority shall enact or enforce any ordinance on the matters covered by this code unless expressly authorized herein."

[4] The cited sections provide: Section 22507: "Local authorities may by ordinance or resolution prohibit or restrict the parking or standing of vehicles on certain streets or highways, or portions thereof, during all or certain hours of the day..."

Section 22508: "Local authorities shall not establish parking meter zones or fix the rate of fees for such zones except by ordinance.... Any ordinance adopted pursuant to this section establishing a parking meter zone or fixing rates of fees for such a zone shall be subject to local referendum processes in the same manner as if such ordinance dealt with a matter of purely local concern."

Section 22519: "Local authorities may by ordinance or resolution prohibit, restrict or regulate the parking, stopping or standing of vehicles on any offstreet parking facility which it owns or operates...."

Government Code section 54037: "The local agency may impose and collect a reasonable charge for the parking off street of motor vehicles."

[5] Section 40000.1 provides: "Except as otherwise provided in this article, it is unlawful and constitutes an infraction for any person to violate, or fail to comply with any provision of this code, or any local ordinance adopted pursuant to this code."

Section 41102, subdivision (a) provides in pertinent part: "In any prosecution against

ly to the vehicle and must state the ordinance section violated, the time and place of violation, and where and when the accused must appear in response; and further written notice must be given of the bail due, with directions for mailing payment to a specified address.[6]

Penal Code section 1269b requires the municipal and justice court judges of each county to adopt a uniform bail schedule for misdemeanors and infractions. The parties here stipulated that bail for overtime parking at a meter in Alhambra has been $5 since April 1, 1976, and before then was "$2.00 before the complaint went to notice and $7.00 thereafter."

Alhambra contends its ordinance merely fixes the parking fees authorized by sections 22507, 22508, 22519, and Government Code section 54037 (fn. 4, *ante*). Yet on its face section 12.08.010 treats the fees not as reasonable charges for parking but rather as penalties for parking violations. The section is titled "Enforcement procedure." Its subdivision (a), titled "Procedure for Payment of Penalty", states that "as a deterrent to the abuse of parking privileges" a fee of "fifty cents for each hour or portion thereof during which the violation continues" shall be

---

the registered owner of a motor vehicle charging a violation of any regulation governing the standing or parking of a vehicle under this code, any federal statute or regulation, or any ordinance enacted by local authorities, proof that the particular vehicle described in the complaint was parked in violation of any provision of this code, any federal statute or regulation, or such ordinance, together with proof that the defendant named in the complaint was at the time of parking the registered owner of the vehicle, shall constitute prima facie evidence that the registered owner of the vehicle was the person who parked or placed the vehicle at the point where, and for the time during which, the violation occurred .... The above provisions shall apply only when the procedure required by Section 41103 is complied with."

Additional provisions of section 41102 apply the presumption against the lessee or renter of a vehicle.

[6]Section 41103, subdivision (1) provides: "The method of giving notice for the purposes of the provisions of Section 41102 is as follows:

"(1) During the time of the violation a notice thereof shall be securely attached to the vehicle setting forth the violation, including reference to the section of this code or of such ordinance so violated, the approximate time thereof, and the location where such violation occurred and fixing a time and place for appearance by the registered owner or the lessee or renter in answer to such notice.

"Such notice shall be attached to such vehicle either on the steering post or front door handle thereof or in such other conspicuous place upon the vehicle as to be easily observed by the person in charge of such vehicle upon his return thereto."

Subdivisions (2) and (3) of section 41103 provide for personal notice to the accused as a prerequisite to enforcement by arrest or withholding of registration renewal.

Section 40309.5 provides: "Every written notice of a violation of an ordinance of a city or county relating to parking offenses shall be accompanied by a written notice of the bail due for that violation and the address of the person authorized to receive a deposit of bail, to whom payments thereof may be sent, and a statement in bold print that payments of the bail for such parking offenses may be sent through the mail."

paid the city "for overtime or illegal parking." "Any overtime parking violation...which continues...longer...than one hour shall be deemed to be a continuing violation and each complete one hour period plus any remaining fraction of an hour shall be deemed to be a separate violation.... If such penalty is paid after nine a.m. of...the next business day...the penalty shall be two dollars instead of the fifty cents penalty ...provided the two dollar penalty is paid prior to the date specified for the court appearance of the violator."

Moreover, subdivision (b) of the ordinance directs city employees, "when any vehicle is unlawfully parked overtime," to issue a "Notice of Violation" patterned after that prescribed by section 41103 (fn. 6, *ante*) and telling the "time and place for appearance by the person committing such violation to answer such notice." In practice the notice begins with a warning that "if you do not pay the fee for overtime parking in the manner provided below, you must appear in the Municipal Court" at a specified place and time. There follow directions on how to "pay the proper penalty" by "placing the fee in the enclosed envelope and depositing it in any courtesy box...or by paying it in the City Treasurer's Office ...."[7]

Alhambra argues that its notice complies with section 41103, subdivision (1) and fulfills that section's requirements for initiating prosecution of violators who fail to pay the city for overtime parking. The notice

---

[7]The notice is in the following form:

"OVERTIME PARKING NOTICE
Your Parking Has Expired

"YOU ARE HEREBY NOTIFIED that if you do not pay the fee for overtime parking in the manner provided below, you must appear in the Municipal Court, 200 W. Woodward Avenue, Alhambra, California, at 9:00 A.M. on the date shown at the right

"YOU NEED NOT APPEAR IN COURT provided you pay the proper penalty as follows: [¶] (50¢) Fifty Cents if paid by 9:00 A.M. of the day following the date of this notice. [¶] (2.00) Two Dollars if paid *after* 9:00 A.M. of the day following the date of this notice and before the court appearance date above.

"Payment may be made by placing the fee in the enclosed envelope and depositing it in any courtesy box provided for that purpose or by paying it in the City Treasurer's Office, 111 South First Street, Alhambra City Hall by such time. If the overtime parking continues for more than one hour, you may incur additional penalties.

"Note. If court proceedings are necessary a warrant could issue with additional penalties.

On the back of the form the citing officer fills in the time, location, type of vehicle, license number, and "[d]escription of [v]iolation(s)." Also printed on the back is "Violation AMC Sec. 12.08.030."

omits, however, the information required by section 40309.5 (fn. 6, *ante*): bail due, where payment may be sent, and a statement that payment may be mailed. The city fees admittedly are not "bail." Alhambra contends that section 40309.5 does not refer to the notice attached to the parked vehicle (§ 41103, subd. (1)) but applies only to the subsequent notice that must be mailed or personally delivered before a warrant of arrest may be issued or the Department of Motor Vehicles notified (§ 41103, subds. (2), (3)). Alhambra reasons that, because the enforcing officer is not required to attach a notice to the vehicle if the violator can immediately be located and served with a notice to appear (*People v. Bebbington* (1968) 265 Cal.App.2d 709, 711-712 [71 Cal. Rptr. 509]), section 40309.5 is satisfied by a notice directed to a named person. The section, though, purports to apply without exception to "[e]very written notice of a violation of an ordinance of a city or county relating to parking offenses." Those words clearly include not only every notice under section 41103, subdivision (1) but also Alhambra's "overtime parking notice" (fn. 7, *ante*).

The ordinance therefore conflicts with the Vehicle Code. It prescribes not authorized fees for lawful parking but unauthorized penalties for unlawful parking. Moreover, instead of implementing the code's provisions for bail the ordinance offers the violator an immunity from code-mandated proceedings on payment of a noncode penalty directly to the city. The ordinance thus transgresses section 21's prohibition of local enactments that deal with "matters covered by" the code (§ 21, fn. 3, *ante*; see *People* v. *Moore* (1964) 229 Cal.App.2d 221, 228 [40 Cal.Rptr. 121]; *Board of Trustees* v. *Municipal Court* (1979) 95 Cal. App.3d 322, 328 [157 Cal.Rptr. 133].[8])

Alhambra contends that those conflicts with state statutes do not preclude it from enforcing the ordinance pursuant to the autonomous powers of chartered cities over municipal affairs (Cal. Const., art. XI, § 5). It is settled, however, that parking meter regulation is a form of traffic control as to which state statutes supersede even ordinances au-

---

[8]*Board of Trustees* holds that municipal courts may refuse to accept (1) duplicate notices of parking violations left on unattended vehicles, and (2) payments of bail in response to those notices (§ 40309.5, fn. 6, *ante*). The opinion states: "This holding in no way is intended to suggest that a university (or city) may establish its own system of parking fines outside the provisions and limitations of the bail schedule set up strictly in accordance with the state law." (95 Cal.App.3d at p. 328.) Despite the court's suggestion to the contrary (95 Cal.App.3d at pp. 326-327), Penal Code section 1269b, subdivision (d), requiring "the municipal and justice court judges in each county" to adopt "a uniform, countywide schedule of bail for all misdemeanor and infraction offenses," appears to govern the determination of the amounts of bail.

thorized by charter. (*Siegel* v. *City of Oakland* (1978) 79 Cal.App.3d 351, 357 [145 Cal.Rptr. 62]; *Bragg* v. *City of Auburn* (1967) 253 Cal. App.2d 50 [61 Cal.Rptr. 284]; *Mervynne* v. *Acker* (1961) 189 Cal. App.2d 558, 561-562 [11 Cal.Rptr. 340].) There is no significant distinction between the parking-meter regulations considered in those cases and the ordinance here. The court below thus correctly declared the ordinance preempted by the Vehicle Code and enjoined enforcement that fails to comply with the code.

### County's Share of Parking-ticket Collections

The damages awarded the county were measured by the amount it would have received if the fees collected under the city ordinance had been fines or forfeitures under Penal Code section 1463.

Does that section apply to bail paid in response to a ticket left on an unattended vehicle? The section calls for deposit with the county treasurer and the subsequent distribution of fines and forfeitures collected "in any municipal or justice court." *Board of Trustees* v. *Municipal Court, supra*, 95 Cal.App.3d 322, 327, and *City of San Diego* v. *Municipal Court* (1980) 102 Cal.App.3d 775, 779 [162 Cal.Rptr. 420], which held those courts had no duty to accept money paid because of tickets attached to vehicles (§ 41103, subd. (1)), reasoned that money paid to the enforcing agency (e.g., a city) is not collected "in any... court" and thus need not be deposited under Penal Code section 1463. Those opinions did not, however, consider the effect of section 42201.5, which states that "[f]ines, forfeitures, and deposits of bail collected as a result of a charge or conviction of an infraction shall be deposited and distributed *in the same manner* as fines, forfeitures, and deposits of bail collected from a person charged with or convicted of a misdemeanor." (Italics added.) The reference to funds "collected as a result of a charge...of an infraction" clearly covers payments in response to a section 41103, subdivision (1) parking ticket. Since collections from misdemeanants are governed by Penal Code section 1463, payments because of section 41103, subdivision (1) would seem to be subject to the same rules.

Distribution under Penal Code section 1463, however, depends on whether the "arrest" that preceded the underlying misdemeanor charge or conviction was made by a state, county, or city officer. (See fn. 2, *ante*; cf. Pen. Code, §§ 1463.2-1463.4, 1463.5a-1463.13 on proceeds

collected following arrests by other local agencies.) Thus, if there is an arrest, subdivision (1)(c) of section 1463 provides for distribution to the county of 13 percent of all fines and forfeitures collected by Alhambra officers; 87 percent goes to Alhambra under subdivision (1)(d).

Obviously no arrest precedes an infraction charge manifested only by a ticket left on an unattended vehicle. How then should bail submitted because of that ticket be distributed under Penal Code section 1463? Neither that section nor any other statutes called to our attention provides for distribution of fines or forfeitures *not* preceded by an arrest. So distribution of nonarrest money "in the same manner" as misdemeanor fines and forfeitures (§ 42201.5) appears to benefit city, county, or state according to which government employs the officer who initiated the charge whether by arrest, issuance of a ticket, or otherwise. (Cf. 53 Ops.Cal.Atty.Gen. 29 (1970) reaching a similar conclusion under Pen. Code, § 1463 without considering § 42201.5.)

We recognize that the probable reason the Legislature required distribution to counties of a share of fines and forfeitures emanating from city arrests (Pen. Code, § 1463, subd. (1)(c), (d)) was to reimburse the counties for the added caseload in their municipal and justice courts. (On county financing of those courts, see Gov. Code, §§ 68073, 71220.) At Alhambra's request we judicially notice a letter it received from the Alhambra Municipal Court, dated August 13, 1979, stating that on authority of *Board of Trustees* v. *Municipal Court, supra*, 95 Cal.App.3d 322, the court from January 1, 1980, on would discontinue accepting parking citations as to which a complaint had not yet been filed. The Legislature already has recognized the need for fiscal adjustment to reflect that change of function. (See Stats. 1979, ch. 827, amending Pen. Code, §§ 1463.5a-1463.6, eff. Sept. 20, 1979, to make distribution of parking-ticket collections from state college and university campuses dependent on what functions are assumed by local courts.) Additional legislation may be appropriate regarding parking violations within cities.

COUNTY'S STANDING TO SUE

Alhambra contends that the county lacks standing to attack the ordinance or to recover any of the fees Alhambra collected. Arguing that the only monetary recovery possible would be by persons who paid the fees, Alhambra cites *Scol Corp.* v. *City of Los Angeles* (1970) 12 Cal.

App.3d 805 [91 Cal.Rptr. 67], which barred a retailer from recovering taxes illegally collected from customers and paid to the city.

The record shows, however, that if Alhambra's notices of overtime parking had directed violators to pay the bail prescribed by state law instead of the illegal city fees the resulting collections, distributable under Penal Code section 1463, subdivision (1)(c) and (d), would have been at least equal to the illegal fees. Therefore the trial court properly awarded the county damages measured by its statutory share of those fees. (*Palo Alto-Menlo Park Yellow Cab Co.* v. *Santa Clara County Transit Dist.* (1976) 65 Cal.App.3d 121, 131 [135 Cal.Rptr. 192] ("violation of a statute gives to any person within the statute's protection a right of action to recover damages caused by its violation"); Gov. Code, § 23004, subdivision (a) (county has capacity to "sue and be sued"); *Los Angeles* v. *Los Angeles* (1884) 65 Cal. 476 [4 P. 453] (fines payable to county treasurer and wrongfully retained by defendant city).)

The bases of the county's right to be made whole as a result of Alhambra's past violations likewise support the county's standing to obtain injunctive relief against future violations.

### Limitations, Laches, Estoppel

Relying on the one-year statute of limitations for "[a]n action upon a statute...for a forfeiture or penalty" (Code Civ. Proc., § 340, subd. 2), Alhambra contends that the money judgment should have extended to fees collected only one year instead of three years before the filing of the complaint. The penalty if any was against the parking violators, not against Alhambra. The obligation enforced by the judgment was not to pay a penalty but to deposit with the county treasurer funds received in performance of a governmental function.

Alhambra states that it "does not seek to raise the defenses of laches and estoppel against the declaratory relief or injunction but only against the money judgment for the past operation." ■ The defense of laches, however, is not available at law, only in equity. (*Bagdasarian* v. *Gragnon* (1948) 31 Cal.2d 744, 752 [192 P.2d 935]; *Perez* v. *Singh* (1971) 21 Cal.App.3d 870, 872 [97 Cal.Rptr. 920].)

■ The estoppel claim is based on the county's knowledge of and failure to object to the ordinance for over a decade, assertedly leading Alhambra to rely on the ordinance's validity. The elements of estoppel

and its applicability to governmental parties have been stated in *Strong v. County of Santa Cruz* (1975) 15 Cal.3d 720, 725 [125 Cal.Rptr. 896, 543 P.2d 264], as follows: "The doctrine of equitable estoppel is founded on concepts of equity and fair dealing. It provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment. The elements of the doctrine are that (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 488-489 [91 Cal.Rptr. 23, 476 P.2d 423].)

"*Mansell* made it clear that, although estoppel may be applied against the government when justice and right require it, the doctrine is inapplicable if it would result in the nullification of a strong rule of policy adopted for the benefit of the public. (3 Cal.3d at p. 493.)"

Even if we assume the county's knowledge and the absence of policy against applying estoppel, there is no evidence that the county knew facts of which Alhambra was ignorant or misled Alhambra as to the validity of the ordinance. The relevant facts were known to all concerned; validity presented only issues of law as to which county and city each could determine its own position.

The judgment is affirmed.

Bird, C. J., Tobriner, J., Richardson, J., and Manuel, J., concurred.

**MOSK, J.**—I dissent.

Reduced to its simplest dimension, the majority opinion instructs the City of Alhambra that it cannot retain its 50-cent overparking fee notice and that it *must* process overtime parking through municipal court as a $5 bail forfeiture. No compassion is shown for the economic interests of motorists who may be delayed moments longer than anticipated, or for merchants who exist on the trade engendered by the visiting motorists, or for the image of Alhambra as a considerate host. The crucial factor, as seen by the majority, is the revenue demanded by the County of Los Angeles.

The essential question is whether the state Vehicle Code preempts the field of street parking. The test for preemption was declared by this court in *In re Hubbard* (1964) 62 Cal.2d 119, 127 [41 Cal.Rptr. 393]: a local entity may not legislate with regard to matters covered by general law if (a) the local legislation attempts to impose additional requirements, or (b) the subject matter is one of state concern and the general law occupies the entire field, or (c) the subject matter is of such statewide concern that it can no longer be deemed a municipal affair.

The Alhambra scheme does not offend the foregoing limitations. First, the local legislation imposes fewer, not more, burdens than state law. Second, the subject matter, local parking, is not of state concern and the general law specifically permits cities to set parking meter fees. (Veh. Code, § 22508.) Third, there is no indication that the Legislature deemed parking meter regulations to be anything but a municipal affair; indeed, the right of municipalities to regulate local parking is recognized by statute. (Veh. Code, § 22507.)

There is no question that Alhambra may permit free parking on its streets or it may charge therefor. It may also use meters as a means of collecting fees for parking, and it may set the fee rates per minute or per hour. I see no reason in law or logic why it may not also prescribe the fee per hour for additional or overtime parking. That is all Alhambra has done in its ordinance 12.08.010: "...a fee shall be charged for overtime or illegal parking in any parking lot or in any space adjacent to any parking meter, which fee shall be in the amount of fifty cents for each hour or portion thereof...."

In consideration of the convenience of its motorists the city further provided in the ordinance that the "fee shall be placed in the envelope furnished with such notice [of overtime] and the envelope and fee shall be deposited...in any courtesy box furnished by the city for that purpose." If it is permissible for a city to provide the fee for hourly parking to be deposited in a meter, I fail to see why the city is prohibited from permitting the overtime parking fee to be deposited in an envelope provided for that purpose.

Only if and when the prescribed fees are not paid does a vehicle code violation occur. At that point the motorist is charged with an infraction and must deposit bail in the municipal court. Thereafter if bail is forfeited or a fine imposed the County of Los Angeles is entitled to its

percentage interest in the sum collected. No statute gives the county any interest in parking meter fees, hourly or overtime, whether placed in the meter or in an envelope, prior to the time an actual infraction occurs.

My view on the foregoing is consistent with the recent conclusion of the Court of Appeal in *Board of Trustees* v. *Municipal Court* (1979) 95 Cal.App.3d 322 [157 Cal.Rptr. 133]. Although the case involved a state college campus rather than a city, the court approved "as an administrative function" the payment of a parking ticket fee to the college rather than to a court "because it is neither true bail nor a true forfeiture of bail."

In the exercise of its municipal powers the City of Alhambra has attempted to avoid burdening its motorists, and at the same time it has sought to eliminate a substantial caseload from our overtaxed judicial system. The acquisitive desires of the County of Los Angeles should not frustrate those salutary goals.

I would reverse the judgment.

Clark, J., concurred.

Appellant's petition for a rehearing was denied July 17, 1980. Mosk, J., and Clark, J., were of the opinion that the petition should be granted.