[No. B034545. Second Dist., Div. Four. Dec. 18, 1989.]

CITY OF LOS ANGELES, Plaintiff and Respondent, v.
COUNTY OF LOS ANGELES et al., Defendants and Appellants.

## COUNSEL

De Witt W. Clinton, County Counsel, and Tighe F. Hudson, Deputy County Counsel, for Defendants and Appellants.

James K. Hahn, City Attorney, Richard A. Dawson, Assistant City Attorney, and Michael L. Klekner, Deputy City Attorney, for Plaintiff and Respondent.

## OPINION

**GEORGE, J.**—The County of Los Angeles, the Board of Supervisors of Los Angeles County, Richard Dixon, Chief Administrative Officer of Los Angeles County, Mark Bloodgood, Auditor-Controller of Los Angeles County, the Municipal Court of the Los Angeles Judicial District, and its court administrator, Edward Kritzman (collectively referred to as County) appeal from a judgment granting issuance of a peremptory writ of mandate directing County to distribute to the City of Los Angeles (City), pursuant to Penal Code section 1463,[1] 92 percent of the moneys collected by the Municipal Court of the Los Angeles Judicial District (Municipal Court) "after the entry of a summary judgment against the surety following a bailbond forfeiture . . . ." For the reasons that follow, we hold that section 1463 governs the distribution of funds collected by a municipal court upon enforcement

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

Section 1463 provides, in pertinent part: "Except as otherwise specifically provided by law:

"(a) All fines and forfeitures . . . collected upon conviction or upon forfeiture of bail, together with moneys deposited as bail, in any municipal court or justice court, shall, as soon as practicable after the receipt thereof, be deposited with the county treasurer of the county in which the court is situated. The moneys so deposited shall be distributed as follows:

". . . . . . . . . . . . . . . . . . .

"(3) Once a month there shall be transferred into the general fund of the county an amount equal to that percentage of the fines and forfeitures collected during the preceding month upon conviction or upon the forfeiture of bail following arrests made by officers or other persons employed by each city in the county which is set forth in the following schedule: . . ."

The schedule which follows provides that 8 percent of such funds shall be deposited in the county general fund for the City of Los Angeles.

of summary judgments against sureties following bail forfeitures, and affirm the judgment.

### Procedural History

On June 26, 1985, City filed a petition for writ of mandate in superior court alleging as follows: "Prior to November, 1983 [County] transferred to [City] 92 percent of all fines, forfeitures, deposits in court and unclaimed bail collected by [Municipal Court] as required by Penal Code Section 1463. [¶] . . . Commencing in November, 1983, [County] ceased to transfer to [City] 92 percent of monies collected by [Municipal Court] whenever it was necessary to collect on a bailbond forfeiture by the entry of a summary judgement against the bond surety. Instead, these monies were ordered transferred directly from [Municipal Court] to the General Fund of [County]." City alleged losses of revenue of approximately $500,000 per year. Attached to the petition was a July 13, 1983, opinion of the Los Angeles County Counsel which concluded that the provisions of section 1463 were not applicable to "monies collected after the entry of summary judgments following bail bond forfeitures."

County filed an answer admitting the above-quoted allegations in the petition.[2]

Pursuant to a judgment filed April 19, 1988, the court below ordered the issuance of a peremptory writ of mandate directing County to distribute to City, in accordance with the provisions of section 1463, "its share of the monies collected by [Municipal Court] after the entry of a summary judgment against the surety following a bailbond forfeiture, including monies collected and retained by [County] since November 13, 1983[,] and interest thereon . . . ."

### Discussion

### I

### Section 1463 Governs the Distribution of Funds Collected by Enforcement of Summary Judgments Against Bail Sureties

■ "We begin with the fundamental rule that a court 'should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] In determining such intent '[t]he court turns first to the words

---

[2] Subsequently, the present action was consolidated with case No. C 553697.

themselves for the answer.' [Citation.] We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' [Citations.] 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose[ ]' [citation]; 'a construction making some words surplusage is to be avoided.' [Citation.]" (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

Section 1463 is unofficially entitled "Disposition of fines and forfeitures collected in municipal or justice courts." In relevant part, the statute directs the municipal court to deposit with the county treasurer "[a]ll fines and forfeitures . . . collected upon conviction or upon the forfeiture of bail . . . in any municipal court . . . ." The statute directs the county treasurer, in turn, to distribute to the county general fund, according to a schedule, a "percentage of the fines and forfeitures collected . . . following arrests made by officers or other persons employed by each city" and to distribute the remainder to the city. The schedule provides that Los Angeles County is to receive 8 percent of the funds collected following arrests made by employees of the City of Los Angeles, with the City of Los Angeles receiving the remaining 92 percent.[3]

County contends the distribution of funds collected by enforcement of summary judgments against bail sureties, pursuant to section 1306,[4] is not governed by section 1463 and that funds so obtained inure to the sole benefit of the county.

Funds collected by enforcement of summary judgments against bail sureties are not expressly excluded from the scope of section 1463. By its terms, section 1463 governs the distribution of all funds "collected . . . upon the forfeiture of bail . . . in any municipal court." ▮ We must determine, therefore, whether the phrase "upon the forfeiture of bail" encompasses funds obtained through enforcement of summary judgments against bail

---

[3] "[T]he probable reason the Legislature required distribution to counties of a share of fines and forfeitures emanating from city arrests [citation] was to reimburse the counties for the added caseload in their municipal and justice courts." (*County of Los Angeles* v. *City of Alhambra* (1980) 27 Cal.3d 184, 194 [165 Cal.Rptr. 440, 612 P.2d 24].)

[4] Section 1306 provides: "(a) When any bond is forfeited and the period of time specified in Section 1305 has elapsed without the forfeiture having been set aside, the court which has declared the forfeiture, regardless of the amount of the bail, shall enter a summary judgment against each bondsman named in the bond in the amount for which the bondsman is bound. . . . [¶] (d) The district attorney or civil legal adviser of the board of supervisors shall: . . . [¶] (2) If the judgment remains unpaid for a period of 20 days after demand has been made, . . . forthwith enforce the judgment in the manner provided for enforcement of money judgments generally."

sureties.[5] We begin by examining the statutory basis for the execution and forfeiture of bail bonds.

A defendant admitted to bail may, in lieu of submitting the amount of bail in cash, deposit with the custodial officer of the jail or the clerk of the court the amount of bail in the form of a "surety bond executed by a certified, admitted surety insurer." (§ 1269b, subd. (a).) "All money and surety bonds so deposited with an officer authorized to receive bail shall be transmitted immediately to the judge or clerk of the court . . . ." (§ 1269b, subd. (f).)

"If, without sufficient excuse, the defendant neglects to appear . . . the undertaking of bail, or the money deposited instead of bail, as the case may be, must thereupon be declared forfeited . . . ." (§ 1305, subd. (a).) Section 1305 provides that, within 180 days, the forfeiture may be set aside if specified conditions are met.

If the forfeiture is not set aside, section 1306 directs the court that declared the forfeiture to enter summary judgment against the bond surety. The statute directs the district attorney or the county's civil legal adviser, within 30 days after summary judgment becomes final, to demand immediate payment and, if the judgment remains unpaid 20 days after demand, to "enforce the judgment in the manner provided for enforcement of money judgments generally."

As is clear from the foregoing, "the provisions of section[s] 1305 and 1306 of the Penal Code . . . govern forfeiture of bail, discharge of the

---

[5] We need not, and do not, decide whether section 1463 governs the distribution of funds which are obtained through enforcement of summary judgments against bail sureties but are collected by an agency other than the municipal court, because the case before us involves only funds collected by the municipal court. The complaint filed by City sought recovery of "its share of the monies *collected by the Municipal Court* . . . after the entry of summary judgement against the surety following a bailbond forfeiture . . . ." (Italics added.) County admitted in its answer that "[County] ceased to transfer to [City] 92 percent of monies *collected by* [Municipal Court] whenever it was necessary to collect on a bailbond forfeiture by the entry of a summary judgement against the bond surety." (Italics added.) The judgment, in turn, applies only to "monies *collected by* [Municipal Court]." (Italics added.)

County contends, however, "there is no legal requirement that monies paid to satisfy a summary judgment against a bail surety should be 'received' or 'collected' by the municipal court" and thus concludes that "[p]ayments collected after the entry of summary judgment thus are not statutorily 'collected' or 'received' by the court and do not come within the Section 1463 distribution scheme."

We do not agree that section 1463 governs only the distribution of fines and forfeitures which the municipal court is required to collect and not those which the court collects absent statutory compulsion. Section 1463 applies to "[a]ll fines and forfeitures . . . collected . . . upon the forfeiture of bail . . . in any municipal court . . . ." Application of the statute does not depend upon the reason the funds were collected or the method by which they were collected by the municipal court. Once received by the municipal court, such funds must be deposited with the county treasurer and distributed in accordance with section 1463.

forfeiture, and enforcement of the forfeiture." (*Newman* v. *Superior Court* (1967) 67 Cal.2d 620, 624-625 [63 Cal.Rptr. 284, 432 P.2d 972].) The phrase "collected . . . upon the forfeiture of bail," as it appears in section 1463, therefore refers to the procedures for collection provided in section 1306. Section 1463 thus expressly includes within its reach funds obtained through the collection procedures provided in section 1306. Accordingly, we hold that moneys obtained through enforcement of summary judgments against bail sureties pursuant to section 1306 are collected "upon the forfeiture of bail" within the meaning of section 1463.

County contends: "Penal Code Section 1463 should be read literally as apportioning money which is collected solely as a result of the entry of forfeiture without further legal process." The statutory scheme outlined above, however, does not provide for "collection" of money "solely as a result of the entry of forfeiture." Section 1305 controls the entry of forfeiture but contains no provisions for collection of funds. Collection procedures are provided in section 1306 which is titled, in part, "Enforcement of forfeiture . . . ." ■ (*American Federation of Teachers* v. *Board of Education* (1980) 107 Cal.App.3d 829, 836 [166 Cal.Rptr. 89], "'chapter and section headings [of an act] may properly be considered . . .' and are entitled to considerable weight [citation].") ■ The collection procedures provided in section 1306 are predicated upon the entry of summary judgment and do not provide for collection of money solely as a result of entry of forfeiture.

County contends section 1463 is limited "by its very terms, to the criminal case" and, therefore, does not govern the distribution of funds obtained through enforcement of summary judgments under section 1306 because such enforcement involves "collateral civil proceeding[s]." Although it is true that "forfeiture of bail is an independent, collateral matter, civil in nature" (*Newman* v. *Superior Court, supra,* 67 Cal.2d 620, 625), nothing in the language of section 1463 limits its scope to the pendency of the criminal case or excludes funds obtained as a result of such collateral civil proceedings.

County points to the phrase in section 1463, "upon the forfeiture of bail," and asserts the word "upon" in this context means "immediately following" or "very soon after." County concludes: "Since collections after summary judgments occur not earlier than 180 days after the entry of forfeiture and are collectable until 1,100 days after the entry of forfeiture, they cannot be construed as collected 'upon' entry of forfeiture." ■ Use of the word "upon" in this context, however, does not denote temporal proximity as County asserts. The primary definition of "upon" is "on." (Webster's Third New Internat. Dict. (1981) p. 2517.) The most apt definition of "on" is

"following or as a result of something . . . ." (*Id.*, at p. 1574.) The determinative factor is the source of the funds, not the time they were collected.

County notes that in Government Code section 77010, the Legislature defined the term "forfeiture" to include "all money forfeited . . . whether collected by a court or agency of a county and regardless of the stage of the process after citation at which it is collected." County asserts that the Legislature's failure to codify a similar definition in section 1463 means the term "forfeiture" must have a different meaning as used in that statute. County argues that "it is clear that 'forfeiture' under Penal Code Section 1463 is *sui generis,* that is, a unique meaning of forfeiture is created." We disagree.

■ "Where the same term or phrase is used in a similar manner in two related statutes concerning the same subject, the same meaning should be attributed to the term in both statutes unless countervailing indications require otherwise. [Citations.]" (*Dieckmann* v. *Superior Court* (1985) 175 Cal.App.3d 345, 356 [220 Cal.Rptr. 602]; *Walker* v. *Superior Court* (1988) 47 Cal.3d 112, 132 [253 Cal.Rptr. 1, 763 P.2d 852].) ■ The definition of "forfeiture" provided in Government Code section 77010 is part of the Brown-Presley Trial Court Funding Act. Government Code section 77205 of that act requires each participating county to file an annual report "of all revenues, including filing fees, fines, and forfeitures . . . ." The "forfeitures" referred to in Government Code section 77205 obviously are the same "forfeitures" referred to in section 1463. We must assume, therefore, that the term "forfeiture" as used in section 1463 was intended by the Legislature to have the same meaning as when that term is used in Government Code section 77010.

Our conclusion is bolstered by an examination of the predecessor to the Brown-Presley Trial Court Funding Act, the Trial Court Funding Act of 1985, which similarly defined "forfeiture" to include "all money forfeited . . . whether collected by a court or agency of a county . . . regardless . . . of the process after citation at which it is collected." (Former Gov. Code, § 77001, subd. (f).) Former Government Code section 77400 required: "After disposition of all Vehicle Code fines and forfeitures, or portions thereof, in accordance with Sections 1463.02 to 1463.20, inclusive, of the Penal Code, all fines and forfeitures, or portions thereof, which otherwise would accrue to the benefit of a city or cities within an option county, and all filing fees and fines and forfeitures, or portions thereof, which otherwise would accrue to an option county, shall all be transmitted quarterly by the option county to the state." The former act thus expressly recognized that the "fines and forfeitures" referred to in the Trial Court Funding Act of 1985 were the same "fines and forfeitures" referred to in the sections immediately

following and closely connected to section 1463. Additionally, the phrase "all fines and forfeitures, or portions thereof, which otherwise would accrue to the benefit of a city or cities within an option county" obviously refers to the distribution provisions of section 1463 itself.

It is clear the term "forfeiture" as used in the Trial Court Funding Act of 1985 had the same meaning as that term is used in section 1463. The Brown-Presley Trial Court Funding Act preserves the definition of "forfeiture" used in the Trial Court Funding Act of 1985, with only minor changes not here relevant. Accordingly, the definition of "forfeiture" in the Brown-Presley Trial Court Funding Act, to include "all money forfeited . . . regardless of the stage of the process after citation at which it is collected," applies to section 1463 as well.

■ Lastly, County contends that application of section 1463 to funds obtained through enforcement of summary judgments against bond sureties would adversely affect the Brown-Presley Trial Court Funding Act, and that awarding to City 92 percent of the funds so obtained is unfair because section 1306 places the burden of enforcing such summary judgments on County. These assertions involve matters of policy which are more appropriately addressed to the Legislature than to this court.

Because the only reasonable interpretation of the language of section 1463 is that the statute governs the distribution of funds obtained through enforcement of summary judgments against bail sureties, we do not address County's arguments based on the legislative history of the statute. ■ " 'It is a settled principle in California law that "When statutory language is thus clear and unambiguous there is no need for construction, and courts should not indulge in it." [Citation.]' " (*In re Lance W.* (1985) 37 Cal.3d 873, 886 [210 Cal.Rptr. 631, 694 P.2d 744].)

II

MANDATE IS AN APPROPRIATE REMEDY IN THE PRESENT CASE

■ County contends a writ of mandate should not have issued because section 1463 is directed to the county treasurer and the treasurer of Los Angeles County was not named as a party to the present action. Although section 1463 specifies that the funds collected by the municipal court shall be deposited with the county treasurer, the statute then states: "The money so deposited shall be distributed as follows: . . ." Section 1463, therefore, does not single out the county treasurer as the sole county official with authority to distribute funds pursuant to the statute. Furthermore, the County of Los Angeles and its board of supervisors are among the named

defendants. Nothing in the record before us suggests these parties lack the power or authority to comply with the writ of mandate.

■ County also contends mandate does not lie to compel County to release to City funds "which the county treasurer already distributed to the county general fund." To the contrary, mandate is an appropriate remedy to compel the performance of a ministerial duty to release funds wrongly withheld. (*County of Sacramento* v. *Lackner* (1979) 97 Cal.App.3d 576, 588 [159 Cal.Rptr. 1].)

### DISPOSITION

The judgment is affirmed.

McClosky, Acting P. J., and Goertzen, J., concurred.

Appellants' petition for review by the Supreme Court was denied February 21, 1990.