TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 97-1106 |
| of | : | |
| | : | March 17, 1998 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE STEPHEN O. HEDSTROM, DISTRICT ATTORNEY, LAKE COUNTY, has requested an opinion on the following questions:

1. Is a county financially responsible for the costs of analyzing a body fluid specimen obtained from a person arrested for being under the influence of a controlled substance by a California Highway Patrol officer in unincorporated territory of the county?

2. Is a county financially responsible for the costs of analyzing a body fluid specimen obtained from a person arrested for being under the influence of a controlled substance by a city police officer within a city?

CONCLUSIONS

1. A county is financially responsible for the costs of analyzing a body fluid specimen obtained from a person arrested for being under the influence of a controlled substance by a California Highway Patrol officer in unincorporated territory of the county if funds in the special account established pursuant to law for such payment are unavailable.

2. A county is not financially responsible for the costs of analyzing a body fluid specimen obtained from a person arrested for being under the influence of a controlled substance by a city police officer within a city. If funds in the special account established pursuant to law for such payment are unavailable, the city is financially responsible for the costs.

ANALYSIS

An officer of the California Highway Patrol ("CHP") observes a person parked by the side of a highway. Upon investigation, the officer determines that the person is under the influence of drugs. The officer arrests the person and transports him to a hospital where a blood sample is taken and tested for the presence of drugs. Later, a complaint is filed and the person is prosecuted for being "under the influence of any controlled substance . . . ." (Health & Saf. Code, § 11550, subd. (a).) **Footnote No, 1**

The first question presented for resolution concerns whether a county is financially responsible for the costs of the drug test in the above described circumstances if the arrest by the CHP officer takes place in an unincorporated area of the county. The second question presented concerns whether the county is responsible for the drug testing in the same circumstances except that the arrest takes place in a city by a city police officer. We conclude that the county is responsible in the first instance and that the city is responsible in the second instance unless funds are available in a special account established pursuant to law for payment of such costs.

In examining these questions, we focus upon the terms of section 11372.5, which state in part:

"(a) Every person who is convicted of a violation of Section . . . 11550 . . . shall pay a criminal laboratory analysis fee in the amount of fifty dollars ($50) for each separate offense. The court shall increase the total fine necessary to include this increment.

" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(b) The county treasurer shall maintain a criminalistic laboratories fund. The sum of fifty dollars ($50) shall be deposited into the fund for every conviction under Section . . . 11550 . . . in addition to fines, forfeitures and other moneys which are transmitted by the courts to the county treasurer pursuant to Section 11502. The deposits shall be made prior to any transfer pursuant to Section 11502. . . . Moneys in the criminalistic laboratories fund shall, except as otherwise provided in this section, be used exclusively to fund (1) costs incurred by criminalistic laboratories providing microscopic and chemical analyses for controlled substances, in connection with criminal investigations conducted within both the incorporated or unincorporated portions of the county, . . . As used in this section, 'criminalistic laboratory' means a laboratory operated by, or under contract with, a city, county, or other public agency, including a criminalistic laboratory of the Department of Justice, (1) which has not less than one regularly employed forensic scientist engaged in the analysis of solid-dose controlled substances, and (2) which is registered as an analytical laboratory with the Drug Enforcement Administration of the United States Department of Justice for the possession of all scheduled controlled substances. . . ." **Footnote No, 2**

Section 11372.5 may be construed by applying well established principles of statutory interpretation. "[W]e interpret a statute in context, examining other legislation on the same subject, to determine the Legislature's probable intent." (*California Teachers' Assn.* v. *Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 642.) "'Statutes are not to be read in isolation, but must be construed with related statutes. . . .'" (*State Farm Mut. Auto Ins. Co.* v. *Department of Motor Vehicles* (1997) 53 Cal.App.4th 1076, 1082.) "It is a well settled rule of

statutory construction that statutes relating to the same subject matter must be read together and harmonized if possible." (*Bed, Bath & Beyond of La Jolla, Inc.* v. *La Jolla Village Square Venture Partners* (1997) 52 Cal.App.4th 867, 876.) "Generally identical words . . . in different statutes relating to the same subject matter are construed as having the same meaning." (*People* v. *Contreras* (1997) 55 Cal.App.4th 760, 764.) "'Where the same term or phrase is used in a similar manner in two related statutes concerning the same subject, the same meaning should be attributed to the term in both statutes unless countervailing indications require otherwise. [Citations.]'" (*City of Los Angeles* v. *County of Los Angeles* (1989) 216 Cal.App.3d 916, 924.)

     1.      Arrest By CHP Officer

Section 11372.5 provides the general answer to the first question. The costs incurred by a criminalistic laboratory in analyzing a body fluid specimen obtained from a person arrested for being under the influence of a controlled substance are to be paid from the criminalistic laboratories fund. (§ 11372.5, subd. (b).) It is irrelevant where the arrest takes place or which law enforcement agency orders the chemical analysis. Hence, when a CHP officer makes an arrest in unincorporated territory of a county, money in the criminalistic laboratories fund may be used to pay for the analysis performed by the criminalistic laboratory.

An issue remains, however, concerning which agency is responsible for payment when the special fund is depleted or the analysis is performed by an entity other than a "criminalistic laboratory" as defined in the statute. For example, which agency is required to pay for the chemical tests if the hospital in the given situation does not have a "contract with a city, county, or other public agency" (§ 11372.5, subd. (b)) and thus does not qualify as a criminalistic laboratory?

Section 11372.5 does not directly answer the latter question. Nor does any other statute. Nonetheless, in a related statutory scheme involving arrests for *driving* under the influence of a controlled substance or alcohol (Veh. Code, §§ 13353, 23155-23159), the Legislature has imposed financial responsibility for the costs of the tests upon the county or city depending upon where the arrest by the CHP officer takes place, when funds in the special account are unavailable. (See 79 Ops.Cal.Atty.Gen. 266, 268-269 (1996); 75 Ops.Cal.Atty.Gen. 117, 121, fn. 2 (1992).)

We believe similar treatment should be accorded arrests by CHP officers for being under the influence of a controlled substance (§ 11550, subd. (a)). The two statutory schemes are almost identical in nature, with funds in a special account normally available to pay for the costs of the chemical analysis. As we quoted in our 1996 opinion from a legislative committee report:

"'. . . The state does not pay for costs associated with California Highway Patrol drug and alcohol testing. By statute, these costs must . . . be paid for by the County or cities, depending on the location of the arrest. . . .'" (79 Ops.Cal.Atty.Gen., *supra*, 269.)

We conclude in answer to the first question that a county is financially responsible for the costs of analyzing a body fluid specimen obtained from a person arrested for being under the

influence of a controlled substance by a CHP officer in unincorporated territory of the county if funds in the special account established pursuant to law for such payment are unavailable.

2.  Arrest By City Police Officer

The second question is only slightly different from the first: is the county financially liable for the drug testing costs when the arrest is made by a city police officer within a city? We conclude that it is not.

As indicated in response to the first question, the criminalistic laboratories fund established under the terms of subdivision (b) of section 11372.5 is available regardless of where the arrest takes place or which law enforcement agency makes the arrest. The only issue, as in the first question, is which public agency is financially liable for the costs of the chemical analysis when funds in the special account are unavailable, such as when the account is depleted or the chemical testing is not performed by a "criminalistic laboratory" as defined in the statute.

In our prior opinions dealing with arrests for driving under the influence of a controlled substance or alcohol, we found that the Legislature had placed financial responsibility upon the city when the arrest was made by a city police officer in the city and funds in the special account were unavailable. (79 Ops.Cal.Atty.Gen., *supra*, 268-269; 75 Ops.Cal.Atty.Gen., *supra*, 120-121.) Such allocation of financial responsibility is consistent with the general principle that the public agency making the arrest should pay for the normal costs associated with the arrest. (See 80 Ops.Cal.Atty.Gen. 78, 79-83 (1997); 79 Ops.Cal.Atty.Gen., *supra*, 268-269; 75 Ops.Cal.Atty.Gen., *supra*, 120-121; 69 Ops.Cal.Atty.Gen. 36, 42-44 (1986); 53 Ops.Cal.Atty.Gen. 113, 115-116 (1970); 31 Ops.Cal.Atty.Gen. 141-143 (1958).) We know of no basis for shifting these costs to the county in the described circumstances.

We thus conclude in answer to the second question that a county is not financially responsible for the costs of analyzing a body fluid specimen obtained from a person arrested for being under the influence of a controlled substance by a city police officer within a city. If funds in the special account established pursuant to law for such payment are unavailable, the city is financially responsible for the costs.

* * * * *

---

**Footnote No. 1**
All references hereafter to the Health and Safety Code are by section number only.
**Footnote No. 2**
Section 11502 allocates 75 percent of any fines collected to the state and 25 percent to the county or city where the offenses occurred.

---