[Crim. No. 9997.   Second Dist., Div. One.   Aug. 17, 1964.]

THE PEOPLE, Plaintiff and Appellant, v. JAMES BASCOM MOORE et al., Defendants and Respondents.

THE PEOPLE, Plaintiff and Appellant, v. BURL RAT-CLIFF et al., Defendants and Respondents.

(Consolidated Cases.)

Roger Arnebergh, City Attorney, Philip E. Grey, Assistant City Attorney, and Herbert Blitz, Deputy City Attorney, for Plaintiff and Appellant.

Newell & Chester and Theodore A. Chester for Defendants and Respondents.

THE COURT.—In two separate cases defendants were charged with violation of section 71.01.1 of the Los Angeles Municipal Code (Ordinance No. 77,000) in that defendants "did wilfully and unlawfully in the City of Los Angeles, drive a vehicle as defined in section 71.00 of the Los Angeles Municipal Code, to wit: A Public Transportation Vehicle, without first having obtained a written Driver's Permit from the Board of Public Utilities and Transportation of the City of Los Angeles, so to do."

The municipal court sustained the demurrers of defendants and dismissed each complaint. The People appealed. The two appeals were heard together by the Appellate Department of the Superior Court of Los Angeles County, which reversed the judgments and certified the cases to the District Court of Appeal. Pursuant to rule 62 of the California Rules of Court, this court ordered the cases transferred to it.

The question is whether the subject matter of section 71.01.1 of the municipal code has been preempted by the general law. Said section provides that no person shall drive any of the vehicles defined in section 71.00 without first having obtained a written "Driver's Permit" from the Board of Public Utilities and Transportation of the City of Los Angeles. Section 71.00 defines "Public Transportation Vehicle" as "Every automobile or motor-propelled vehicle, not otherwise defined in this section, used in the service or business of transporting passengers over streets of this City, whether or not the transportation extends beyond the City and whether or not any fee, compensation or consideration of any character is charged, paid or received for such transportation." The same section provides that " 'Driver' includes every person in charge of, driving or operating any motor-propelled vehicle mentioned in this Section, either as agent, employee or otherwise." Other sections of the ordinance provide that every applicant for a permit to drive any passenger-carrying vehicle defined and mentioned in the ordinance must be a citizen of the United States or one who has regularly declared his intention to become a citizen, and must be at least 21 years of age; applicants must file with the board an application upon blanks provided by the board containing such information as is provided by the rules and regulations of the board. Each permit granted by the board must be filed with the city clerk, who shall collect $3.00 for each new permit and

$2.00 for each renewed permit issued. Permits may be granted, denied, revoked, suspended or cancelled, as to any person or applicant whenever, in the exercise of reasonable and sound discretion, the board determines that the provisions of the ordinance have not been complied with or that the permittee or applicant is or is not a fit or proper person to be in charge of or operate any vehicle mentioned in section 71.00, as may be determined by the rules and regulations of the board.

In *Abbott* v. *City of Los Angeles,* 53 Cal.2d 674, 681-682 [3 Cal.Rptr. 158, 349 P.2d 974], it is stated: "A city has no power to legislate upon matters which are not of a local nature (*Pipoly* v. *Benson,* 20 Cal.2d 366, 369 [125 P.2d 482, 147 A.L.R. 515] ; *Lossman* v. *City of Stockton,* 6 Cal. App.2d 324, *supra,* at pp. 327-328 [44 P.2d 397], both holding that control of traffic on highways is not a local matter).

When there is a doubt as to whether an attempted regulation relates to a municipal or to a state matter, or if it be the mixed concern of both, the doubt must be resolved in favor of the legislative authority of the state. (*Ex parte Daniels,* 183 Cal. 636, 639-640 [192 P. 442, 21 A.L.R. 1172] ; *Lossman* v. *City of Stockton, supra.*)

"These rules are not limited in their application to situations where a local body attempts to enact legislation the actual language of which conflicts with previously enacted state law. These rules also prevent any legislation by a local body (other than in furtherance of the state law) when the entire field, that is the subject matter of the ordinance, has already been fully occupied by the state. Thus the Constitution prohibits a city from imposing additional requirements in a state occupied field. (*James* v. *Myers,* 68 Cal. App.2d 23 [156 P.2d 69] ; *Agnew* v. *City of Los Angeles,* 51 Cal.2d 1 [330 P.2d 385]). . . ." It is further stated at page 683: "In *Pipoly* v. *Benson, supra,* this court discussed the governing principles and stated at pages 371-373: 'Where a statute and an ordinance are identical it is obvious that the field sought to be covered by the ordinance has already been occupied by state legislation. The exception to the general rule permitting additional local regulation has been also applied, however, in situations where it is not so apparent that the field is already occupied by a statute. In *Ex parte Daniels, supra,* it was held that, if such was the intent of the Legislature, a statute setting up a general scheme for the control of motor vehicles on the highways might constitutionally occupy the entire field so that local ordinances on

the subject would be invalid. (*In re Murphy, supra* [190 Cal. 286 (212 P. 30)] ; *Atlas Mixed Mortar Co.* v. *City of Burbank, supra* [202 Cal. 660 (262 P. 334)] ; Grant, *op. cit. supra* at pp. 99-100.) ■ ''The effect of these several decisions is to declare that whenever the State of California sees fit to adopt a general scheme for the regulation and control of motor vehicles upon the public highways of the state, the entire control over whatever phases of the subject are covered by state legislation ceases insofar as municipal or local legislation is concerned.'' (*Atlas Mixed Mortar Co.* v. *City of Burbank, supra,* p. 663.) Under these circumstances, the ordinance is invalid because there is no room left for supplementary local regulation of the particular subject and any such legislation is necessarily inconsistent with the state law. The difficult question in such cases is whether the state law was intended to occupy the entire field. ■ Where the statute contains language indicating that the Legislature did not intend its regulations to be exclusive, the general rule permitting additional supplementary local regulations has been applied. (*In re Iverson, supra,* p. 588 [199 Cal. 582 (250 P. 681)] ; *Natural Milk Prod. Assn.* v. *San Francisco, ante,* p. 101 [124 P.2d 25] ; *In re Simmons, supra,* p. 593 [199 Cal. 590 (250 P. 684)].) Conversely where the statute contains express provisions indicating that the Legislature intends its regulations to be exclusive within a certain field, the courts have given effect to this intention.' ''

■ Section 21 of the Vehicle Code provides : ''Except as otherwise expressly provided, the provisions of this code are applicable and uniform throughout the State and in all counties and municipalities therein, and no local authority shall enact or enforce any ordinance on the matters covered by this code unless expressly authorized herein.'' By this section, the Legislature has provided ''present statutory authority for the proposition that unless express authority is granted, a local government has no authority to regulate or control any matter covered by the Vehicle Code.'' (*Biber Electric Co.* v. *City of San Carlos,* 181 Cal.App.2d 342, 344 [5 Cal.Rptr. 261].)

■ The Legislature has adopted a general and detailed scheme for the licensing of drivers in Division 6 of the Vehicle Code (§§ 12500-14901). Section 12500 provides : ''(a) No person shall drive a motor vehicle upon a highway unless he then holds a driver's license issued under this code, except such persons as are expressly exempted under this code. (b) No such person shall drive a motor vehicle or combina-

tion of vehicles that is not of a type for which he is licensed."
The application for a driver's license shall contain informa-
tion as to "The type of motor vehicle or combination of
vehicles the applicant desires to operate" (§ 12800, subd. (c)).
In the examination for a driver's license, in addition to other
tests, "the applicant shall be required to give an actual dem-
onstration of his ability to exercise ordinary and reasonable
control in operating a motor vehicle by driving the same under
the supervision of an examining officer and submit to an
examination appropriate to the type of motor vehicle or com-
bination of vehicles he desires a license to drive" (§ 12804).
Division 6 of the Vehicle Code sets forth a general plan not
only for the issuance, expiration and renewal of the driver's
license (§§ 12500-13103), but also for the suspension or revo-
cation of licenses (§§ 13200-14400), proscription against the
violation of license provisions (§§ 14600-14610), and license
fees (§§ 14900-14901). Clearly the licensing of all drivers is
one of the "matters covered by" the Vehicle Code (§ 21) and
the ordinance in question purports to require an additional
license in a field covered by this general law. Thus, the precise
question presented to us for determination is whether express
authority for the licensing of drivers of a public transporta-
tion vehicle by the City of Los Angeles is found in either
section 16501 or section 21100.[1]

Section 16501 provides: "The provisions of this chapter
shall not prevent local authorities, within the reasonable
exercise of the police power, from adopting rules and regu-
lations, by ordinance or resolution, licensing and regulating
the operation of any vehicle for hire." This section is found
in chapter 4 of division 7 of the code which deals with
"Financial Responsibility Laws," chapter 4 thereof being
entitled "Commercial Passenger Vehicles."

Section 21100 provides: "Local authorities may adopt rules
and regulations by ordinance or resolution on the following
matters: . . . (b) Licensing and regulating the operation of
vehicles for hire." This section is found in chapter 1 (Obe-
dience to and Effect of Traffic Laws) of division 11 of the
code which concerns "Rules of the Road." No similar provi-
sion is found in division 6 of the code.

The scope and effect of sections 16501 and 21100,
however, are not necessarily limited by reason of their being
placed in the said respective divisions and chapters of the

[1]All statutory references hereinafter are to the Vehicle Code, unless
otherwise indicated.

228

code above mentioned by reason of the provisions of section 7 of the Vehicle Code: "Division, chapter, and article headings do not in any manner affect the scope, meaning, or intent of the provisions of this code." (See *Cavalli* v. *Luckett*, 40 Cal. App.2d 250, 255-256 [104 P.2d 708].) ▌ "In the face of such a provision the headings may not be considered in construing the code and the several sections must be given the construction which their language demands without regard to the headings under which they may appear." (*Pepper* v. *Board of Directors*, 162 Cal.App.2d 1, 5 [327 P.2d 928].)

▌ "It is the function of the courts to construe and apply the law as it is enacted and not to add thereto nor detract therefrom." (*Pacific Coast etc. Bank* v. *Roberts*, 16 Cal.2d 800, 805 [108 P.2d 439].) ▌ In *Pacific Gas & Electric Co.* v. *Shasta Dam etc. Dist.*, 135 Cal.App.2d 463, 468 [287 P.2d 841], the court states that "the better and more modern rule of construction is to construe a legislative enactment in accordance with the ordinary meaning of the language used and to assume that the Legislature knew what it was saying and meant what it said." ▌ Also, in view of the intent of the Legislature as expressed in section 21 of the Vehicle Code, *supra*, the delegation of authority to local authorities will be strictly construed, —such authority must be "expressly (not impliedly) declared by the Legislature." (*Holman* v. *Viko*, 161 Cal.App.2d 87, 93 [326 P.2d 551].)

▌ Although the state has also covered the field of registration and licensing of vehicles (Veh. Code, §§ 4000-5354; 16100-16110; 16503; 8800) and the payment of fees therefor (Veh. Code, §§ 9250 et seq.; 9550-9562; Rev. & Tax. Code, § 10701 et seq.), we believe it is in this field, i.e., the licensing of the *vehicle*, that express authorization is given by the language used in sections 16501 and 21100, permitting a city to adopt rules and regulations "licensing and regulating the operation of any vehicle for hire." ▌ This language cannot be construed as authorizing the licensing of the *driver* as such.

▌ Section 71.01.1 is confined to the requirement of a "Driver's Permit" as compared to a "Vehicle Permit."[2]

2Compare section 71.01 of said city ordinance which provides: "(a) No person shall operate or use, whether as owner, lessee or otherwise, any of the vehicles defined in section 71.00, or allow or permit to be operated or used, whether as owner, lessor or otherwise, any of the vehicles defined in section 71.00, unless a written Vehicle Permit for the operation of such vehicle has been obtained from the Board; provided, however, that no Vehicle Permit shall be required for the operation of

It is therefore not within the purview of any express authorization granted by the state, and since it attempts to impose additional requirements in a field which has been preempted by the general law, it is invalid. (*Agnew* v. *City of Los Angeles,* 51 Cal.2d 1, 5, 7 [330 P.2d 385]; *In re Moss,* 58 Cal.2d 117, 118 [23 Cal.Rptr. 361, 373 P.2d 425].)

The judgments are affirmed.

any vehicle under and in accordance with the terms and conditions of a franchise granted by the City of Los Angeles to the operator of such vehicle.''