OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 89-602 |
| of | : | |
| | : | JANUARY 11, 1990 |
| JOHN K. VAN DE KAMP | : | |
| Attorney General | : | |
| | : | |
| RONALD M. WEISKOPF | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE ROBERT G. BEVERLY, MEMBER OF THE CALIFORNIA SENATE, has requested an opinion on the following question:

Does a California city have the authority to prohibit the parking of particular categories of vehicles, such as recreational vehicles or motor vehicles which exceed a specified length or width, on its residential streets during all or certain hours of the day?

CONCLUSION

A California city has no authority to prohibit the parking of particular categories of vehicles on its residential streets during all or certain hours of the day, with the exception of commercial vehicles having a manufacturer's gross vehicle weight rating of 10,000 pounds or more.

ANALYSIS

This opinion addresses the question of whether a California city may adopt an ordinance to prohibit the general parking of particular classes of vehicles on its residential streets. For example, we are asked whether a city might enact an ordinance to specifically prohibit the parking on residential streets of oversized vehicles, or the parking of recreational vehicles.[1] We will see that the authority for a city to adopt such

_____

[1]The question asked does not define the term "recreational vehicle" and the term is not defined in the Vehicle Code. However, the term does have a customary meaning in the industry and among

an ordinance must be found in the specifics of the Vehicle Code, and on examining its provisions we will conclude that with the exception of being able to prohibit the parking of certain commercial vehicles in residential areas, a city is without authority to particularize other types of vehicles, as by size, or kind, or use, in order to similarly prohibit their parking.

Section 7 of article XI of the California Constitution provides that a city "may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." (Cal. Const, art. XI, § 7.) This authority is often referred to as the "police power" (70 Ops.Cal.Atty.Gen. 210, 211 (1987)), and an ordinance adopted under it would be presumed to be valid as long as it did not conflict with general, i.e., state law. (Cf., *Freeman* v. *Contra Costa County Water District* (1971) 18 Cal.App.3d 404, 408; *Stanislaus Co. etc. Assn.* v. *Stanislaus* (1937) 8 Cal.2d 378, 383, 384.)

But if a city ordinance adopted under the "police power" does conflict with state law it would be void. (*People* ex rel. *Deukmejian* v. *County of Mendocino* (1984) 36 Cal.3d 476, 484; 72 Ops.Cal.Atty.Gen. 180, 182 (1989).) Our Supreme Court has summarized the notion of conflict:

> "`"As defined by the cases the constitutional phrase `conflict with general laws' ... may arise in several different ways. It may grow out of the exact language of the state and municipal laws [citations] or from a local attempt `to impose additional requirements in a field that is preempted by general law' [citations] or from the state's adoption of `a general scheme for the regulation of a particular subject' [citations]."'" (*Baron* v. *City of Los Angeles* (1970) 2 Cal.3d 535, 541 [emphasis added]; see also *People* ex rel *Deukmejian* v. *County of Mendocino*, *supra*, at 484-485; *Lancaster* v. *Municipal Court* (1972) 6 Cal.3d 805, 806, 808; 58 Ops.Cal.Atty.Gen. 519, 521-523, 529 (1975); 58 Ops.Cal.Atty.Gen. 13, 14, *supra*.)

"Conflict" with state law can thus arise in many ways, and as pertinent herein, one of them occurs when the state has enacted a comprehensive legislative scheme intended for uniform application throughout the state and has indicated an intention to preempt local regulation in the area. The Vehicle Code is such an enactment and in fact contains its own preemption rule, found in

-----

RV-users, where it normally includes vehicles which are self-propelled or towed and which are designed to be slept in. Thus "recreational vehicle" would include such vehicles as travel trailers, van campers, truck campers, coaches, and motorhomes, although taken on its face the term is broad enough to include any vehicle used for "recreation."

its section 21.[2]  (*Rumford* v. *City of Berkeley* (1982) 31 Cal.3d 545, 551; *County of Los Angeles* v. *City of Alhambra* (1980) 27 Cal.3d 184, 189; *Pipoly* v. *Benson* (1942) 20 Cal.2d 366, 371; *City of Lafayette* v. *County of Contra Costa* (1979) 91 Cal.App.3d 749, 755, 756; *Mervynne* v. *Acker* (1961) 189 Cal.App.2d 558, 561-562; 68 Ops.Cal.Atty.Gen. 101, 102 (1985); 64 Ops.Cal.Atty.Gen. 707, 709-710 (1981); 55 Ops.Cal.Atty.Gen. 178, 179 (1972).)  In that section the State has expressed its plenary power and its preemption of the entire field of traffic regulation and control.  (*Rumford* v. *City of Berkeley*, *supra*, [the entire field of traffic control]; *City of Lafayette* v. *County of Contra Costa*, *supra*, at 755 [the area of motor vehicle traffic control]; 64 Ops.Cal.Atty.Gen. 707, 709, *supra* [the area of motor vehicle traffic regulation and control].)

Section 21 provides as follows:

"Except as otherwise expressly provided, the provisions of this code are applicable and uniform throughout the state and in all counties and municipalities therein, and no local authority shall enact or enforce any ordinance on the matters covered by this code unless expressly authorized therein."

Thus, "a city may regulate traffic on its public streets only to the extent it is so expressly authorized in the Vehicle Code" (68 Ops.Cal.Atty.Gen. 101, 102, *supra*; fn. omitted), and unless it has been so expressly authorized, it "has no authority over vehicular traffic control. [Citations.]" (*Rumford* v. *City of Berkeley*, *supra*, 31 Cal.3d at 550.)  What this means is that "a [c]ity does <u>not</u> have a `very wide discretion' under the police power in legislating in the field covered by the Vehicle Code.  Instead it has <u>no police power in that area at all,</u> `unless expressly authorized' [therein] by the Legislature." (*City of Lafayette* v. *County of Contra Costa*, *supra*, 91 Cal.App.3d at 749; emphases original.)

The regulation of parking on public streets is an adjunct to the control and regulation of vehicular traffic, and that field too is now preempted by state law.  (*County of Los Angeles* v. *City of Alhambra*, *supra*, 27 Cal.3d 184, 192-193; *Siegel* v. *City of Oakland* (1978) 79 Cal.App.3d 351, 357, 358; *Mervynne* v. *Acker*, *supra*, 189 Cal.App.2d at 561; *Bentley* v. *Chapman* (1952) 113 Cal.App.2d 1, 3; 64 Ops.Cal.Atty.Gen. 707, 710, *supra*.)

It was not always so.  Prior to 1935, the Vehicle Code prohibited local authorities from enacting ordinances which in any

---

[2]Further references to sections of the Vehicle Code will be by section number only, and unidentified section references herein should be understood to be to that Code unless context dictates otherwise.

way conflicted with its provisions (see e.g., Veh. Code [1919], § 22(d); Stats. 1919, ch. 147, p. 223, § 13), but since the Code did not address "the method or manner of parking vehicles on the streets of cities or towns" (cf., *Flynn* v. *Blesdoe Co*. (1928) 92 Cal.App. 145, 152), it was held that "no conflict [was] created by a city ordinance regulating the same." (*Ibid*.) With the enactment of the Vehicle Code of 1935 (Stats. 1935, ch. 27, p. 93), "the Legislature determined to ... preempt the field of local legislation in the area of motor vehicle traffic control." (*City of Lafayette* v. *County of Contra Costa*, *supra*, 91 Cal.App.3d at 755.) Section 458 of that Code provided:

> "The provisions of this division [i.e., division 11 entitled "Traffic Laws"] are applicable and uniform throughout the State and in all counties and municipalities therein and no local authority shall enact or enforce any ordinance on the matters covered by this division unless expressly authorized herein." (Stats. 1935, ch. 27, p. 164.)

But an undefined authority for local authorities to enact some local parking regulations was found in section 472 of the Code, and under it it was held that "local authorities [were] ... authorized to enact special rules and regulations dealing with parking of vehicles." (*Pipoly* v. *Benson* (1942) 20 Cal.2d 366, 373.)[3]

In 1953, however, the Legislature added former section 459.8 to the Vehicle Code to provide a specific, and as we shall see a limited, grant of authority for local authorities to regulate parking. (Stats. 1953, ch. 709, p. 1979, § 2.) The section provided:

> "The provisions of this division shall not prevent local authorities, by ordinance or resolution, from prohibiting the parking or standing of vehicles on certain streets or highways, or portions thereof, at all

---

[3]Section 472 of the Vehicle Code of 1935 provided:

"Curb Markings to Indicate Parking Regulations. Whenever local authorities enact local parking regulations and indicate them by the use of paint upon curbs, the following colors only shall be used and such colors indicate as follows: [red = no stopping; yellow = stopping only to unload passengers or freight; white = stopping only for loading or unloading of passengers; green = time limit parking, as may be specified by local ordinance.] [¶]Regulations indicated as above provided shall be effective upon such days and during such hours or times as may be prescribed by local ordinance." (Stats. 1935, ch. 27, p. 169.)

or certain hours of the day."  (Stats. 1953, ch. 709, § 2, *supra*.)

The Legislature recodified the Vehicle Code in 1959, and upon that recodification, "preempted the <u>entire field</u> covered by [it] by substituting in place of section 458 the new section 21...."  (*City of Lafayette* v. *County of Contra Costa*, *supra*, 91 Cal.App.3d at 755.)  As quoted above, it only permits local authorities to enact ordinances on matters covered by the Code only to the extent "expressly authorized therein."  (Veh. Code, § 21, *supra*.)  Thus, to answer the question whether a city may prohibit certain classes of vehicles from parking on residential streets, under section 21 of the Vehicle Code we must look to its other provisions to see the extent to which the Legislature has expressly permitted local authorities to regulate parking.  (Cf., *Rumford* v. *City of Berkeley*, *supra*, 31 Cal.3d at 550;  *City of Lafayette* v. *County of Contra Costa*, *supra*, at 756; 67 Ops.Cal.Atty.Gen. 1, 4 (1984).)[4]

In several sections of chapter 9 (§ 22500 et seq.) of division 11 of the Code, the Legislature has permitted local authorities, such as cities, to adopt ordinances to regulate parking within their jurisdiction in various situations.[5]  Most of

---

[4]It should be noted that the regulation of vehicular use of the public roads and highways by whatever means is outside the "municipal affairs" constitutional grant of authority to chartered cities, by which they are given power superior to that of the Legislature to legislate on matters of "municipal" concern. (*Rumford* v. *City of Berkeley*, *supra*, 31 Cal.3d at 550 fn. 3; 68 Ops.Cal.Atty.Gen. 101, 102 fn. 2, *supra*; 67 Ops.Cal.Atty.Gen. 1, 4, *supra*; cf., Cal.Const., art. XI, § 5; 72 Ops.Cal.Atty.Gen. 180, 182 fn. 4, *supra*.)  The regulation of parking is also not a "municipal affair" in the sense of giving a chartered municipality control of the matter in derogation of the power of the state.  (*County of Los Angeles* v. *City of Alhambra*, *supra*, 27 Cal.3d at 193; *Siegel* v. *City of Oakland*, *supra*, 79 Cal.App.3d at 357; *Mervynne* v. *Acker*, *supra*, 189 Cal.App.2d at 561-562, 564-565.)

[5]A "local authority" is defined to mean "the legislative body of every county or municipality having authority to adopt local police regulations."  (§ 385.)  The terms "park" or "parking" are defined to mean "the standing of a vehicle, whether occupied or not, otherwise than temporarily for the purpose and while actually engaged in loading or unloading merchandise or passengers."  (§ 463; see also, *Fleming* v. *Flick* (1934) 140 Cal.App. 14, 30 ["...the term park ... [means] in substance, the voluntary act of leaving a car on the main-traveled portion of the highway when not in use. It means something more than a mere temporary or momentary stoppage on the road for a necessary purpose."]; accord, 64 Ops.Cal.Atty.Gen. 29, 34 & 34 fn. 4 (1981); 62 Ops.Cal.Atty.Gen. 4

the sections conferring that authority involve the adoption of ordinances to address specific parking situations that are not directly relevant because they do not involve the imposition of a general restriction on parking in residential areas.[6]  But two of the sections of the chapter require analysis.

Section 22507, which derives from the aforementioned section 459.8 that was added to the Vehicle Code of 1935 in 1953, permits local authorities to adopt ordinances to prohibit or otherwise restrict parking "on certain streets or highways, or portions thereof, during all or certain hours of the day." And section 22507.5 permits them to adopt ordinances prohibiting or restricting the parking of vehicles on certain streets or highways or portions thereof, between the hours of 2 a.m. and 6 a.m., and ordinances to "prohibit or restrict the parking or standing, on any street, or portion thereof, in a residential district, of commercial vehicles having a manufacturer's gross vehicle weight rating of 10,000 pounds or more."[7]  It is upon these sections that

_____

(1979).)

[6](See e.g., §§ 22503.5 [ordinances providing special parking regulations for two-wheeled or three-wheeled motor vehicles]; 22506 [ordinances prohibiting or restricting parking of vehicles on a state highway within the jurisdiction]; 22507.6 [ordinances prohibiting or restricting parking on designated streets or highways for the purpose of street cleaning]; 22508 [ordinances establishing parking meter zones and white-lined designated parking spaces within which a vehicle must park]; 22509 [ordinances requiring the blocking of wheels when vehicles are on hills in business or residential districts]; 22510 [ordinances prohibiting parking on highways, the width of which is restricted after snow clearance]; 22511.7 and 22511.8 [ordinances designating special parking for disabled persons and disabled veterans]; 22512 [ordinances reducing the state's 15 foot prohibited parking distance from a fire hydrant]; 22519 [ordinances regulating, prohibiting or restricting parking of vehicles in any offstreet parking facility which the locality owns or operates].)

[7]A "commercial vehicle" is "a vehicle of a type required to be registered under the [Vehicle Code] used or maintained for the transportation of persons for hire, compensation, or profit or designated, used, or maintained primarily for the transportation of property.  (§ 260, subd. (a).)  It does not include a "vanpool vehicle."  (*Id.*, subd. (c); cf., § 668.)

The "manufacturer's gross vehicle weight rating" is "the weight in pounds of the chassis of a truck or truck tractor with lubricants, radiator full of water, full fuel tank or tanks plus the weights of the cab or driver's compartment, body, special chassis and body equipment and pay load as authorized by the

a city would have to rely for authority to adopt the type of ordinance contemplated in the question.

        A.    Section 22507.

        We turn first to section 22507.  It is the older of the two sections and the one which gives local agencies the most general authority to control parking.  The section presently reads as follows:

> "Local authorities may, by ordinance or resolution, prohibit or restrict the stopping, parking, or standing of vehicles, including, but not limited to, vehicles which are six feet or more in height (including any load thereon) within 100 feet of any intersection, on certain streets or highways, or portions thereof, during all or certain hours of the day.  The ordinance or resolution may include a designation of certain streets upon which preferential parking privileges are given to residents and merchants adjacent to the streets for their use and the use of their guests, under which the residents and merchants may be issued a permit or permits which exempt them from the prohibition or restriction of the ordinance or resolution.  With the exception of alleys, no such ordinance or resolution shall apply until signs or markings giving adequate notice thereof have been placed.  A local ordinance or resolution adopted pursuant to this section may contain provisions which are reasonable and necessary to ensure the effectiveness of a preferential parking program."  (Emphasis added.)

        Section 22507 contains four parts:  (i) a general grant of authority to permit local authorities to prohibit parking on certain streets and highways at all or certain hours of the day; (ii) the specific inclusion of an authority to permit them to prohibit or restrict the parking of vehicles over six feet in height within 100 feet of an intersection; (iii) a grant of authority for them to designate certain streets upon which preferential parking privileges would be given to residents and merchants; and (iv) a requirement that signs be posted to give notice of any parking restriction imposed under the section.  We turn our attention to the first two of these components to determine whether local authorities can prohibit the parking of particular types of vehicles in residential areas.[8]  This will take

_____

chassis manufacturer."  (§ 390.)

        [8]It could not be successfully argued that such authority can be eked from the authority found in the third component of the section giving local authorities power to designate certain streets upon which preferential parking privileges are given to residents

us to a stepped analysis based on the chronological evolution of the section.

### 1. The General Authorization To Prohibit Parking.

Section 22507 commences with a general grant for local authorities to

> "... prohibit or restrict the ... parking ... of vehicles .... on certain streets or highways, or portions thereof, during all or certain hours of the day."

As mentioned, this language dates almost verbatim from a 1953 addition to the Vehicle Code of 1935, and it was carried forward to section 22507 when the Vehicle Code was recodified in 1959 (Stats. 1959, ch. 3, p. 1700, § 2). [9] To ascertain the intended scope of this grant we look to its wording (cf., *Moyer* v. *Workmen's Comp. Appeals Bd*. (1973) 10 Cal.3d 222, 230; *People* v. *Knowles* (1950) 35 Cal.2d 175, 182; *Rich* v. *State Board of Optometry* (1965) 235 Cal.App.2d 591, 604), and interpret it according to the usual, ordinary and generally accepted meaning of the words used to frame it. (Cf., *People* v. *Craft* (1986) 41 Cal.3d 554, 560; *People* v. *Belleci* (1979) 24 Cal.3d 879, 884; *Palos Verdes Faculty Assn*. v. *Palos Verdes Peninsula Unified Sch. Dist*. (1978) 21 Cal.3d 650, 658; *Great Lakes Properties Inc*. v. *City of El Segundo* (1977) 19 Cal.3d 152, 155-156.) Reference to the dictionary is helpful to understand the common generally accepted meaning of a term. (Cf., *People* v. *Spencer* (1975) 52 Cal.App.3d 563, 565; *People* v. *Medina* (1972) 27 Cal.App.3d 473, 479.)

---

and their guests. That authority deals with "classes of persons," not "classes of vehicles" and it is inappropriate to extrapolate an authority to restrict one from the authority to restrict the other. (Cf., *City of Lafayette* v. *County of Contra Costa*, *supra*, 91 Cal.App.3d at 756 fn. 2.)

[9] As we have seen, in 1953 section 459.8 was added to the Vehicle Code of 1935 to provide as follows: "The provisions of this division shall not prevent local authorities, by ordinance or resolution, from prohibiting the parking or standing of vehicles on certain streets or highways, or portions thereof, at all or certain hours of the day." (Stats. 1953, ch. 709, p. 1978, § 2.) Section 22507 of the Vehicle Code of 1959 provided: "Local authorities may by ordinance or resolution prohibit the parking or standing of vehicles on certain streets or highways, or portions thereof, during all or certain hours of the day. (Stats. 1959, ch. 3, p. 1700, § 2.) In 1963 the Legislature added the words "or restrict" to the sentence (Stats. 1963, ch. 1070, p. 2530, § 1), and in 1987 the word "stopping" was added. (Stats. 1987, ch. 455, p. ___, § 4.)

Looking to the wording of the general grant of authority found in section 22507 for local authorities to regulate parking, we see that as added in 1953 and as it appears today, the Legislature used the adjective "certain" to describe both the places where ("streets and highways") and the times during which ("hours of the day") a city might prohibit or otherwise restrict parking but that it did not use the term when referring to the "vehicles" whose parking could be restricted. According to its usual, ordinary and generally accepted meaning, the term "certain" means, inter alia,

> "2a PARTICULAR: of a character ... unwise to specify -- used to distinguish a person or thing not otherwise distinguished or not distinguishable in more precise terms." (Webster's *Third New Intn'l. Dict.* (1971 ed.) at p. 367.)

This would indicate that by using the term to describe the places where, and the times during which, a city might prohibit vehicular parking, the Legislature did not intend to particularize those places and times on a statewide basis, but intended instead to leave those matters to the exercise of local discretion as varying local needs demanded. As such, the section would "authorize[] local authorities to restrict parking, at hours and places to be determined locally...." (*Capolungo* v. *Bondi* (1986) 179 Cal.App.3d 346, 350.)

In contrast, however, the Legislature did not similarly use the word to modify what "vehicles" could be affected by the exercise of that discretion. From that we believe the Legislature did not intend local authorities to have discretion regarding the kinds of vehicles covered by the ordinance. In other words we believe that while the Legislature intended local authorities to have discretion to designate the streets and highways on which parking should be restricted, and the times of day during which such restrictions would apply, they were not to have discretion to designate particular types of vehicles for the purpose of applying parking restrictions only to them. Any parking restrictions that a local authority would choose to impose would have to apply to all vehicles or none.[10]

---

[10]It is interesting to note that the concept of having local regulations affecting traffic apply to all vehicles or none finds expression at least as early as 1919. Subdivision (d) of section 22 of the Vehicle Code as amended that year provided, inter alia: "Local authorities shall have no power to enact, enforce or maintain any ordinance, rule or regulation in any way in conflict with, contrary to or inconsistent with the provisions of this act, or of any section or other subdivision thereof, and no such ordinance, rule or regulation of said local authorities shall have any force or effect, excepting however, that (1) such powers as are now or may hereafter be vested in local authorities to enact

This perception of the purport of section 22507 finds support when we compare the treatment accorded provisions of the Vehicle Code where the word "certain" is present and where it is not. It is present in subdivision (c) of section 21101, which authorizes local authorities to prohibit "the use of particular highways by <u>certain</u> vehicles...." (Emphasis added.) In 55 Ops.Cal.Atty.Gen. 178 (1955) we noted that the phrase "certain vehicles" was not defined (*id*. at 182), but said that it was broad enough to permit a city or county to prohibit the use of particular highways or streets by certain classes of vehicles, such as those determined to be excessively noisy. (*Id*. at 183.) Our conclusion was cited in *City of Lafayette* v. *County of Contra Costa*, *supra*, 91 Cal.App.3d 749, in support of the proposition that subdivision (c) would permit a city to prohibit certain classes of vehicles, "such as trucks, or tractors, or oversize or `excessively noisy' vehicles, or those lacking air-inflated tires," from using particular highways. (*Id*. at 756 fn. 2.) In 67 Ops.Cal.Atty.Gen. 1, *supra*, we again considered the subdivision and concluded that the phrase "certain vehicles" gave local agencies some limited authority to restrict the roads on which certain cargoes, such as hazardous material, might be transported in the jurisdiction. (*Id*. at 5-7.)

In contrast to its subdivision (c), the modifier "certain" is absent from subdivision (a) of section 21101, which permits local authorities to adopt an ordinance "[c]losing any highway [which includes streets (§ 360)] to vehicular traffic when in [its opinion it] is no longer needed for vehicular traffic." In *Rumford* v. *City of Berkeley*, *supra*, 31 Cal.3d 545 and *City of Lafayette* v. *County of Contra Costa*, *supra*, 91 Cal.App.3d 749, the courts considered the issue of whether that grant of authority permitted a city to partially close a public street to some traffic but not to other. Each case held that subdivision (a) did not provide that discretion, and that a city would have to close the street equally to all traffic or none. (31 Cal.3d at 554-558; 91 Cal.App.3d at 756-757.) We reached a similar conclusion in 68 Ops.Cal.Atty.Gen. 101, *supra*, finding that the subdivision did not permit a city to adopt an ordinance authorizing "controlled access" to the public streets in a residential neighborhood. (*Id*. at 103.)

By analogy to the foregoing, we find that while section 22507's general authorization for local agencies to "prohibit or restrict the ... parking ... of vehicles ... on certain streets or highways ... during all or certain hours of the day" might accord

_____

<u>ordinances and regulations, applicable equally and generally to all vehicles and other users of the highways,</u> and providing for traffic or crossing officers or semaphores, to bring about the orderly passage of vehicles and other users of the public highways on certain portions thereof, where the traffic is heavy and continuous...." (Stats. 1919, ch. 147, § 13, p. 223.)

discretion to a city to designate certain streets or highways and certain hours of the day for parking restrictions to be imposed, it does not provide authority to prohibit or restrict the parking of only certain types of vehicles.

    2.   <u>The Specific Authorization To Restrict The Parking of A Certain Class Of Vehicles.</u>

    In 1984 the Legislature amended section 22507 to add in the just-discussed general authorization of its first sentence, a specific authority for local authorities to restrict the parking of vehicles more than six feet in height within 100 feet of an intersection.  (Stats. 1984, ch. 181, p. 555, § 2.)  As amended, the section then permitted local authorities to prohibit or restrict  "the parking or standing of vehicles, <u>including vehicles which are six feet or more in height (including any load thereon) within 100 feet of any intersection  </u>, on certain streets or highways, or portions thereof, during all or certain hours of the day."  (§22507, as amended by Stats. 1984, ch. 181, § 2,  *supra*; emphasis added.)

How was this meant to augment the existing general grant of authority already found in the section?

    "When determining the legislative purpose behind a statutory amendment, [one] may properly consider committee reports (*Southland Mechanical Constructors Corp* . v.  *Nixen* (1981) 119 Cal.App.3d 417, 427), partisan caucus analyses (*id*. at p. 428), and the digest of the Legislative Counsel.  (*People* v. *Superior Court (Douglass)* 1979 24 Cal.3d 428, 434)."  (*People* v. *Martinez* (1987) 194 Cal.App.3d 15, 22; see also, *People* v. *Aston* (1985) 39 Cal.3d 481, 492-493; *Hittle* v. *Santa Barbara County Employees Retirement Assn*. (1985) 39 Cal.3d 374, 387; *California Teachers Assn* . v. *Governing Board* (1983) 141 Cal.App.3d 606, 613; 68 Ops.Cal.Atty.Gen. 23, 25-26, fn. 3; 66 Ops.Cal.Atty.Gen. 382, 386 (1983).)  This is because it will be presumed that the Legislature adopted the subject legislation with the intent and meaning expressed in those documents.  (*People* v. *Martinez*, *supra*, citing *People* v. *Superior Court (Douglass)* , *supra* at 434, *People* v. *Swinney* (1975) 46 Cal.App.3d 332, 342, and *Maben* v. *Superior Court* (1967) 255 Cal.App.2d 708, 713.)

    From such type of documents in the legislative history of the Bill (AB 286) that enacted the 1984 amendment to section 22507, we learn that "[t]he vehicle height prohibition provisions [were] intended to provide better visibility at intersections."  (See e.g., Assembly Office Of Research, *Concurrence in Senate Amendments To AB 286*; Senate Republican Caucus, *Digest To AB 286*, p. 2; Senate Transportation Committee, *Analysis Of AB 286*, p. 2.)  The amendment was thus wrought with an overall purpose of promoting one aspect of traffic safety.  (Cf., *Capolungo* v. *Bondi*, *supra*, 179 Cal.App.3d 346, 351, 352.)

But why was the amendment necessary at all to achieve that end, when section 22507 already gave local authorities the authority "to prohibit or restrict the parking or standing of vehicles on certain streets or highways, or portions thereof, at all or certain hours of the day"?  The Legislative Counsel's Digest to the Bill (AB 286) which amended the section --again, a valuable aid in determining the Legislature's reasons for the legislation-- provides the answer.  The Digest states:

"Existing law authorizes local authorities to prohibit or restrict the parking or standing of vehicles on certain streets or highways during all or certain hours of the day. [¶] This bill would specifically include vehicles which are 6 feet or more in height (including any load thereon) within 100 feet of any intersection as vehicles whose parking or standing may be prohibited or restricted by local authorities ."  (4 Stats. 1984, Sum. Dig. [AB 286], pp. 58-59; emphasis added.)

We thus see that the amendment was enacted to specifically permit local agencies to prohibit or restrict the parking of a particular type of vehicle at a particular place - i.e.,  vehicles that are more than six feet in height, within 100 feet of an intersection. What we perceive that to mean is that without that specific authorization, local authorities would have been without power to single out such oversized vehicles in order to prohibit their parking within 100 feet of an intersection, despite the broad general language found in the introduction to section 22507.  The Legislature obviously considered the amendment necessary in order to confer that authority on local agencies and permit them to prohibit the parking of a specific type of vehicle because the existing general authority to "prohibit or restrict the parking ... of vehicles on certain streets" did not suffice to do so.  Surely if it already had, the Legislature's efforts to add the specific authorization would have produced statutory surplusage, and that is an interpretation of legislative efforts to be avoided.  (Cf., *City and County of San Francisco* v. *Farrell* (1982) 32 Cal.3d 47, 55; *California Mfgrs. Assn*. v. *Public Utilities Com*. (1979) 24 Cal.3d 836, 844; *Fields* v. *Eu* (1976) 18 Cal.3d 322, 328.)

We are thus reinforced in our conclusion that the general grant of authority found in the introduction to section 22507 did not enable local authorities to single out particular types of vehicles in order to restrict their parking.

This perception of the purport of the 1984 amendment is consistent with the dictate that the delegation to local agencies to make rules and regulations to regulate traffic is to be strictly construed and that any grant of such authority must be expressly declared by the Legislature in explicit and unmistakable terms. (Cf., *Rumford* v. *City of Berkeley*, *supra*, 31 Cal.3d at 550, 553;

*City of Lafayette* v. *County of Contra Costa*, *supra*, 91 Cal.App.3d at 756 & 756 fn. 3; *People* v. *Moore* (1964) 229 Cal.App.2d 221, 228; 67 Ops.Cal.Atty.Gen. 1, 4, *supra*.)

The 1984 amendment to section 22507 also demonstrates that when the Legislature has wanted to grant local authorities power to enact an ordinance to prohibit the parking of a particular type of vehicle for reasons of traffic safety, it knows how to do so and has done so specifically. That it has not done so with respect to other types of vehicles would indicate an intention that local agencies were not to have authority to similarly prohibit or otherwise restrict their parking. (Cf., *Safer* v. *Superior Court* (1975) 15 Cal.3d 230, 236, 238; *Board of Trustees* v. *Judge* (1975) 50 Cal.App.3d 920, 927; see also, *Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 196; *DeWeese* v. *Unick* (1980) 102 Cal.App.3d 100, 106; *Rich* v. *State Board of Optometry* (1965) 235 Cal.App.2d 591, 607, discussing the doctrine of "expressio unius est exclusio alterius," i.e., the rule that the expression of one thing in a statute necessarily excludes other things not mentioned.)

In 1985 the Legislature again amended section 22507 to add the phrase "but not limited to" after the word "including" in the first sentence of the section. With that amendment local authorities were given their presently worded authority to "prohibit or restrict the parking ... of vehicles, including, <u>but not limited to</u>, vehicles which are six feet or more in height ... within 100 feet of any intersection, on certain streets or highways, or portions thereof, during all or certain hours of the day." (§ 22507 as amended by Stats. 1985, ch. 912, § 2. p. 2906; emphasis added.) With the amendment, it now became clear that the inclusion of the specific grant of authority to local agencies to prohibit or restrict the parking of vehicles over six feet in height within 100 feet of an intersection did not limit them to enacting just that specified restriction. (Compare *Television Transmission* v. *Public Util. Com.* (1956) 47 Cal.2d 82, 85; *State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd.* (69 Cal.App.3d 884, 890; 11 Ops.Cal.Atty.Gen. 11, 12 (1948), with *People* v. *Western Airlines* (1954) 42 Cal.2d 621, 639; *People* v. *Horner* (1970) 9 Cal.App.3d 23, 27; *Paramount Gen. Hosp. Co.* v. *National Medical Enterprises, Inc*. (1974) 42 Cal.App.3d 496, 501.) Local authorities could now prohibit the parking of any vehicle within 100 feet of an intersection, if required by the needs of traffic safety. Still, as we now see, this did not enable them to classify vehicles by type or size in order to single out particular ones for the sole purpose of restricting their parking in residential areas.[11]

---

[11]It is suggested that the "but not limited to" language wrought by the 1985 amendment not only modifies "vehicles which are six feet or more in height" but also modifies "within 100 feet of any intersection." It is thus suggested that after the 1985

Ordinarily, a grant of authority as is presently found in the wording of section 22507 would not be one of limitation (cf., *People* v. *Western Airlines*, *supra*, 42 Cal.2d at 639; *People* v. *Horner*, *supra*, 9 Cal.App.3d at 27; *Paramount Gen. Hosp. Co*. v. *National Medical Enterprises, Inc.*, *supra*, 42 Cal.App.3d at 501), and from it one might ordinarily imply an ability on the part of local agencies to impose other types of parking restrictions on oversized vehicles than the one specifically mentioned in the section, when required by the needs of traffic safety. Indeed, from the broadest consequence of the use of the phrase "including, but not limited to" one might even be able to ordinarily imply an ability on the part of local authorities to impose parking restrictions on those vehicles for reasons compelled by factors other than traffic safety --such as general safety considerations, or those of aesthetics. (Cf. fn. 2, *ante*.) But we do not deal with an "ordinary" grant of legislative authority.

The grant of authority found in section 22507 deals with a facet of traffic regulation, and so when interpreting it we must be ever mindful of the dictate that the Legislature's delegation to local agencies of the power to make rules and regulations to regulate traffic is to be strictly construed (*Rumford* v. *City of Berkeley*, *supra*, 31 Cal.3d at 550, 553; *City of Lafayette* v. *County of Contra Costa*, *supra*, 91 Cal.App.3d at 756; *People* v. *Moore*, *supra*, 229 Cal.App.2d at 228; 67 Ops.Cal.Atty.Gen. 1, 4, *supra*) and that "such authority must be `<u>expressly (not impliedly)</u> declared by the Legislature'." (*City of Lafayette* v. *County of Contra Costa*, *supra*, quoting *People* v. *Moore*, *supra* (emphasis the court's); accord, 67 Ops.Cal.Atty.Gen., *supra*.) "<u>Expressly</u> means `"in an

---

amendment, local authorities were given authority not only to restrict the parking of any sized vehicle within 100 feet of an intersection, but to prohibit any sized vehicle being parked at places other than intersections, if required by the needs of traffic safety.

We reject the suggestion. It is more apparent from the history of the added language than from the current sentence structure, that the 1985 amendment was merely meant to clarify the change that was made the year before. That as we have seen, was to enable local agencies to provide better visibility at intersections by prohibiting the parking of one particular size of vehicle within the proximity of intersections. The 1985 amendment follows the same structural pattern in the overall section and added an authority to prohibit other categories of vehicles to the parking ban within 100 feet of an intersection. Thus, following the rule of strict construction for Vehicle Code provisions, we see this added authority as being limited to restricting the parking of additional categories of vehicles as would be reasonably calculated to improve visibility at intersections, and not a carte blanche to restrict their parking elsewhere.

express manner; in direct or unmistakable terms; explicitly; definitely; directly."' [Citations.]" (*City of Lafayette* v. *County of Contra Costa*, *supra* at 756 fn. 3; emphasis the court's.)"

We have shown how the basic general authority for local authorities to prohibit parking on certain streets and highways that is found in section 22057, does not give them authority to single out particular classes of vehicles for the imposition of parking restrictions. We have also shown how the amendment to the section in 1984 permitted local authorities to impose a parking restriction or prohibition on one particular class of vehicle in a particular situation involving parking near intersections, and how that was augmented by the amendment to the section in 1985, to permit them to impose the restriction on other types of vehicles in the same situation. Nowhere in section 22057 has the Legislature expressly, not impliedly, and in unmistakable language permitted local authorities to designate a particular class of vehicle, whether by type or size, solely to prohibit its parking in residential areas. Accordingly, we conclude that the section does not provide a basis for them to do so.

B.    Section 22507.5.

In section 22507.5 the Legislature has addressed the ability of local authorities to prohibit the parking of one particular type of vehicle in residential areas. Indeed, in the section the Legislature has permitted them to do so for considerations other than traffic safety.

Like section 22507, section 22507.5 confers authority on local agencies to restrict vehicular parking on its streets. The section deals with the situation of overnight parking in general, but it also specifically permits local authorities to totally prohibit the parking of certain commercial vehicles on residential streets at any time. The section reads as follows:

"(a)    Notwithstanding Section 22507, local authorities may, by ordinance or resolution, prohibit or restrict the parking or standing of vehicles on certain streets or highways, or portions thereof, between the hours of 2 a.m. and 6 a.m., and may, by ordinance or resolution, prohibit or restrict the parking or standing, on any street, or portion thereof, in a residential district, of commercial vehicles having a manufacturer's gross vehicle weight rating of 10,000 pounds or more. The ordinance or resolution relating to parking between the hours of 2 a.m. and 6 a.m. may provide for a system of permits for the purpose of exempting from the prohibition or restriction of the ordinance or resolution handicapped persons and residents of high-density, multiple-family dwelling areas or similar areas lacking adequate offstreet parking facilities. The ordinance or

15.                                      89-602

resolution relating to the parking or standing of commercial vehicles in a residential district, however, shall not be effective with respect to any commercial vehicle making pickups or deliveries of goods, wares, and merchandise from or to any building or structure located on the restricted streets or highways or for the purpose of delivering materials to be used in the actual and bona fide repair, alteration, remodeling, or construction of any building or structure upon the restricted streets or highways for which a building permit has previously been obtained. [¶] (b) <u>For the purpose of implementing this section, each local authority may, by ordinance, define the term `residential district' in accordance with its zoning ordinance</u>. The ordinance shall not be effective unless the legislative body of the local authority holds a public hearing on the proposed ordinance prior to its adoption, with notice of the public hearing given in accordance with Section 65090 of the Government Code." (Emphases added.)

Examining the section, we see that it begins with the phrase "Notwithstanding the provisions of Section 22507." That indicates that section 22507.5 specifically controls over the provisions of Section 22507. (Cf. *In re Marriage of Dover* (1971) 15 Cal.App.3d 675, 678 fn. 3; *State of California* v. *Superior Court* (1967) 252 Cal.App.2d 637, 639-640; *State of California* v. *Superior Court* (1965) 238 Cal.App.2d 691, 693-695.) This may seem somewhat puzzling because the relationship between the two sections is not immediately apparent. But their interrelationship and the established precedence of section 22507.5 is explained in their history.

In 1969, section 22507 was amended to add the requirement, now found in its third sentence, that signs or markings giving adequate notice of a parking restriction first be placed in order for the prohibition to apply. (Stats. 1969, ch. 541, p. 1168. § 1.) Section 22507.5 was adopted at the same time to provide that "[n]otwithstanding [that provision], local authorities may by ordinance ... prohibit or restrict the parking or standing of vehicles on certain streets or highways ... between the hours of 2 a.m. and 6 a.m." (Stats. 1969, ch. 541, p. 1168, § 2.) The Legislative Counsel's Digest to the Bill that enacted the section tells that the "notwithstanding language" was used to permit local authorities to restrict overnight parking "without placing such signs or markings." (1969 (Reg.Sess.) Sum.Dig. [AB 699], p. 78.) Similarly, the Legislative Counsel's Digest to the Bill that amended section 22507.5 in 1975 to provide specific authorization for local authorities to exclude commercial vehicles from parking in residential neighborhoods tells that that was done to "permit[] local authorities to prohibit the parking ... of such vehicles in a residential district <u>without placing such signs or markings</u>...." (4 Stats. 1975, Sum.Dig. [AB 2272], p. 330; emphasis

added.)   Section 22507.5 thus understood, serves as a means by which the Legislature has authorized local agencies to restrict parking and to restrict the parking of certain vehicles without having to post the signs or notices of the restrictions that would otherwise be required by section 22507.

Looking now to the substance of the section we see that it contains two basic authorizations for local authorities to restrict parking.   The first is general and permits them to prohibit or restrict overnight "parking ... of vehicles on certain streets or highways...."   The second is more specific and pointed for it authorizes a total ban on the parking of some commercial vehicles in residential areas.

The wording of the first authorization follows that of section 22507.   In both sections, the Legislature has used the adjective "certain" to modify the words "streets or highways" but it has not used it to modify the word "vehicles."   In our discussion of section 22507, we showed how that construction was indicative of an intent on the part of the Legislature to accord local authorities authority to designate particular streets for a parking restriction to apply, but not the authority to designate particular types of vehicles to apply it to.   The same result would follow with the similarly worded authorization of section 22507.5. While the section might authorize a city to prohibit all vehicles from parking overnight on "certain streets or highways" in residential areas, it would not provide them authority to apply that restriction only to particularly designated types of vehicles. As with section 22507, any overnight parking restriction imposed for the streets of residential areas would have to equally apply to all vehicles that might park there, or to none.

The second authorization of section 22507.5 permits local authorities to totally prohibit the parking of commercial vehicles having a manufacturer's gross vehicle weight rating of 10,000 pounds or more in residential districts.   But other than authorizing a blanket prohibition on the parking of such commercial vehicles in residential districts, the section is silent as to what other types of vehicles may be similarly excluded.   Constrained as we are to construe the authorization strictly and not imply things not expressly stated by the Legislature (*Rumford* v. *City of Berkeley*, *supra*, 31 Cal.3d at 550, 553; *City of Lafayette* v. *County of Contra Costa*, *supra*, 91 Cal.App.3d at 756; *People* v. *Moore*, *supra*, 229 Cal.App.2d at 228; 67 Ops.Cal.Atty.Gen. 1, 4, *supra*), we conclude that that silence is indicative of the Legislature's intention that local agencies not have authority to prohibit or otherwise restrict the parking of other types of vehicles on residential streets.   Moreover, even without the rule dictating strict construction of Vehicle Code provisions, we would reach the same result.   As the 1984 amendment to section 22507 showed with respect to the parking of oversized vehicles near intersections, section 22507.5 demonstrates that when the Legislature has wanted

to grant local authorities the power to enact an ordinance prohibiting the parking of a particular type of vehicle in residential areas, it has specifically done so.  That it has not with respect to other types of vehicles would indicate that local agencies were not to have authority to similarly prohibit their parking.  (Cf. *Wildlife Alive* v. *Chickering*, *supra*, 18 Cal.3d at 196; *Safer* v. *Superior Court*, *supra*, 15 Cal.3d at 236, 238; *DeWeese* v. *Unick*, *supra*, 102 Cal.App.3d at 106; *Board of Trustees* v. *Judge*, *supra*, 50 Cal.App.3d at 927;  *Rich* v. *State Board of Optometry*, *supra*, 235 Cal.App.2d at 607.)

As our Supreme Court said in *Rumford*:

"Most traffic laws are to some extent discriminatory.  In large measure they determine which traffic may use streets under what circumstances.  Nonetheless, localities have no carte blanche and, absent express authority, may not determine which traffic shall and which shall not use streets."  (*Rumford* v. *City of Berkeley*, *supra*, 31 Cal.3d 545, 554.)

Under section 22507.5, a municipality could exclude commercial vehicles from parking in residential neighborhoods; indeed, it could do so purely for reasons of aesthetics.  (See e.g., *People* v. *Tolman* (1980) 110 Cal.App.3d Supp. 6, 10.)  But "unless sanctioned by some provision of state law" (*Bentley* v. *Chapman*, *supra*, 113 Cal.App.2d at 3), a city council would be without authority to similarly prohibit other classes of vehicles from parking on those streets as well.  We have shown how neither section 22507 nor section 22507.5 provides express authority for a city to designate other classes of vehicles for the purpose of restricting their parking in such areas, whether on public health grounds, on public safety grounds, or on any other ground, and how no such authority may be implied.

We therefore conclude that other than prohibiting or otherwise restricting the parking of commercial vehicles having a manufacturer's gross vehicle weight rating of 10,000 pounds or more, a California city has no authority to prohibit the parking of particular categories of vehicles on its residential streets.

\* \* \* \* \*